## Commonwealth *v.* Jones, Appellant.

Argued May 13, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

328

*John H. Wilson,* with him *Albert C. Troutman* and *John H. Jackson,* for appellant.—Before confessions or admissions may be received, they must be voluntary in character: Com. v. Bishop, 285 Pa. 49; Com. v. Epps, 193 Pa. 512; Com. v. Shew, 190 Pa. 23; Com. v. Wilson, 186 Pa. 1; Com. v. Spardute, 278 Pa. 37.

The cases wherein alleged confessions are submitted to the jury, who are to determine whether they are voluntary or involuntary, are those where the confession is just offered as a voluntary one made by defendant without any duress, promise or other inducement, and this confession subsequently repudiated by defendant as having been an involuntary instead of a voluntary one: Com. v. Epps, 193 Pa. 512; Com. v. Bishop, 285 Pa. 49.

*W. H. Martin,* with him *Charles H. Miller,* for appellee.—The corpus delicti is to be proved like other facts, and it may be shown by circumstantial evidence: Gray v. Com., 101 Pa. 380; Com. v. Johnson, 162 Pa. 63; Com. v. Shaeffer, 218 Pa. 437; Com. v. Puglise, 276 Pa. 235; Com. v. Gardner, 282 Pa. 458.

The court did not err in ruling that the admissions were competent evidence to submit to the jury, nor did he err in refusing the motion on the part of defendant to strike out the testimony of the officers testifying to the admissions: Fife v. Com., 29 Pa. 429; Com. v. Aston,

227 Pa. 112; Com. v. Johnson, 162 Pa. 63; Com. v. Johnson, 217 Pa. 77.

The mere fact that defendant was under arrest, or was in charge of armed police officers when he made his confession will not make a confession involuntary: Com. v. Spardute, 278 Pa. 47.,

OPINION BY MR. JUSTICE SCHAFFER, July 1, 1929:

It is altogether likely that appellant, convicted of voluntary manslaughter for the killing of his wife, owes his escape from a finding of guilt of a more serious grade of homicide to the skill of counsel who defended him. He was the proprietor of a garage in the City of Butler. His wife came to his place of business about 9 o'clock on the night of Friday, October 19, 1928. Since that time no one has seen her alive. About midnight on that night an unoccupied farm house located about three miles from Butler was consumed by fire. Defendant was familiar with this house and its surroundings. On the following Sunday, pieces of bones shown by physicians to be human bones were found in the ashes of the building and a further search resulted in the finding of a wrist watch, two small diamond rings, one band ring, a shoe buckle, belt buckles and the stays of a corset supporter worn by women. Each of the articles named was identified as being similar to those worn by defendant's wife. Blood stains identified as human blood were discovered in the grounds of the burned house. A search of the residence occupied by defendant and his wife resulted in the finding in the furnace of portions of the wife's wearing apparel which had been partly consumed by fire, also feathers from a hat she wore, a piece of the hat itself and part of a pocketbook belonging to her. Suspicion having been drawn to defendant in consequence of her absence from home and the finding of the bones and other articles in the ashes of the farm house, he was taken into custody on Monday evening and placed in the county jail. He stated to several people that he

had last seen his wife on Saturday morning after the burning of the farm house. He exhibited complete indifference to her absence. He was kept in jail, no one seeing him except police officers and the sheriff until Tuesday night, when he was removed to the barracks of the state police on the outskirts of Butler. About 9 o'clock he was taken to the third floor of the barracks and seated on a stool alongside a table (there does not seem to have been any reason for so seating him except that there were not enough chairs in the room to seat all who were present) under a strong electric light (all rooms in the barracks are lighted in the same way; the light, made quite a factor in argument, did not apparently make much of an impression on him as all he said about it in testifying was, "one light was pretty bright"). Under these circumstances he was interrogated by the sheriff, county detective and three or four police officers throughout the night and until 6 o'clock the next morning; during all of which time he denied any knowledge of his wife's whereabouts or any hand in making away with her; then ceased his denials and told his interrogators that she left the garage about 9:20 o'clock on Friday night and that sometime thereafter he went to his home and they became involved in a quarrel, during which she picked up the revolver which he had taken out of his pocket and placed on the dresser in the room, and threatened to shoot him, and that in the struggle for the possession of the weapon it exploded and killed her; upon this happening, not knowing what to do, he went out of the house, got his automobile, put his wife's body in it, drove out to the unoccupied farm house, there gathered some rags and paper together, set fire to the house and left it and, when some distance on the road, threw his automatic pistol away, returned the car to the garage, washed some blood spots from the running board, went home, took his wife's dresses, hat, pocketbook and some of her underwear and burned them in the heater in the house, in order to enable him to say to anyone

who inquired about her that she had left and had taken her clothing away. He recited that he went to bed, remained in the house alone until the next morning, when he went to his place of business, continued to stay in the house when not at work until the time he was taken into custody by the police, and said nothing to anyone about his wife's absence, with the exception that he answered a telephone call from one of her sisters in another town, who inquired as to her whereabouts, that he did not know where she was. On the witness stand he at first denied having made these statements testified to by the police. On redirect examination, answering leading questions of his attorney, he said the officers suggested the statements and he assented to them because he was "about all in." The statements were reduced to writing and he swore to them before an alderman. He said he knew nothing about the fire in the farmhouse until Monday night. He admitted that he had gone with the officers to the vicinity of the burned farmhouse on Wednesday morning after they had completed their interrogation of him in the barracks and with them had hunted for the revolver.

The principal complaint raised by appellant, urging that he should have a new trial, is that on his motion the trial judge did not strike from the record as incompetent the testimony of the police officers detailing his statements made to them, on the ground that they were not voluntarily made. In this connection he stated that one of the officers threatened to hit him with a mace and actually knocked him five or six feet off the stool with his fist. This the officer denied and there was nothing in the way of marks on his body or otherwise to support the allegation. He further urges that evidence of his statements should not have been received until the corpus delicti and his connection with the crime had been established beyond a reasonable doubt. Error is also alleged in the qualifying answer to his third point to the effect that if his wife was killed in the struggle and

scuffle with him as set forth in his confession, the verdict should be not guilty, to which the court answered: "Affirmed. I would say that if you find it occurred in the way he said it did, or he made that confession, that is, if he was endeavoring to get possession of the revolver and that it was discharged without any action on his part, that is, accidentally discharged or on action of his wife, in that event he would not be guilty of murder." The argument is that this was an invitation to convict him of a lesser crime. It is also insisted that the court did not properly and adequately submit to the jury in the general charge the question of the competency of defendant's statements as testified to by the officers. The police officers testified that the statements to them were voluntarily made. Bearing on this matter, it is of great moment that he willingly went with the police to the vicinity of the burned house to find the gun. He and they searched for it for more than an hour. This negatives the idea of coercion in obtaining the statement. The real complaint against the admission of his statements is that he was kept in the barracks for a considerable period and questioned by the police. "The only basis [of complaint as to the admission of the confession] is that when it was made defendant was confined in the barracks of the state police and that he had been questioned by the state officers for a considerable period of time. This could not invalidate the confession": Com. v. James, 294 Pa. 156, 161; Com. v. Cavalier, 284 Pa. 311, 315.

We think there was sufficient in the case without the statements made by defendant to warrant his conviction. The proofs established that he was the last person seen with his wife, that partly burned bones shown to be those of a human being were found in the burned house in connection with articles of jewelry worn by her, and that in the cellar of their residence, which was occupied by no one except him, burned articles of wearing apparel belonging to her were discovered. These circum-

stances in themselves were sufficient to establish a criminal agency in causing her death. That he attempted to destroy what he must have deemed to be incriminating evidence against himself by burning it in the heater is a circumstance from which guilt may be inferred: 2 Wharton, Criminal Evidence, section 748, p. 1490 et seq.; Com. v. Marion, 232 Pa. 413, 423. On the witness stand defendant testified his wife was not at home when he reached there from the garage about 10:30 and that he did not see her after that time, thus showing that his previous statement that he saw her on Saturday morning was false. This untrue statement was a circumstance indicating guilt. "The fabrication of false and contradictory accounts by an accused criminal, for the sake of diverting inquiry or casting off suspicion, is a circumstance always indicatory of guilt": Com. v. Spardute, 278 Pa. 37, 43.

Point is made of the fact that he asked for a lawyer sometime during the night when he was being questioned and that none was procured for him, and there is quoted to us what we said in Com. v. Spardute on the subject of denial of the right to obtain counsel. It could not be laid down as a hard and fast rule in the administration of the criminal law under present-day conditions that immediately upon a request by a prisoner for undesignated counsel at any hour of the night police officers must cease interrogation and go out and hunt up an attorney. There does not seem to have been any undue delay in his procuring legal advice, because apparently the next day he retained an attorney. Such a matter and another adverted to, that the officers called him a damned liar and thereby coerced him, are peculiarly for the trial judge. He sees the prisoner, can judge the kind of man he is and can measure the effect of what occurred as we cannot. The defendant is a man with a criminal record, beginning with commitment to a penal institution for crime when a boy and including the possession of burglar's tools, breaking and entering

and robbery. It is difficult to believe that a man with such experiences would be overawed by police officers applying an epithet to him. It is to be borne in mind that what would be an ordeal to a law-abiding man would have no effect upon a hardened criminal. No one is in such good position to determine the effect of police officer's contacts with a prisoner as the judge trying the case. He has them all before him and can best measure the effect on the prisoner of what was said and done: Com. v. Aston, 227 Pa. 112; Com. v. Johnson, 162 Pa. 63; Com. v. Johnson, 217 Pa. 77. It should not be forgotten that "Society and the criminal are at war" (Com. v. Spardute, 278 Pa. 37) and police officers at the critical time of arrest are society's representatives. We would not hesitate to set aside a finding against an accused where we were convinced his constitutional rights had been transgressed; here we are not. The court submitted the question of the voluntariness of defendant's statements to the officers to the jury. Under the circumstances, we are not prepared to say that he should have decided as a matter of law that they were incompetent. "Where by the commonwealth's witnesses it is shown that a confession is made voluntarily, without such threat or inducement as might secure a false confession, it must be admitted. If afterwards the defendant testifies or produces other witnesses who testify, that it was not voluntarily made, it becomes a question for the jury": Com. v. Spardute, supra; Com. v. Bishop, 285 Pa. 49. Here the confession was corroborated by the mute witnesses surviving the fires, the personal belongings found in the ashes of the burned house and those discovered in the heater.

As to the contention that the confession was received before proof had been made of the corpus delicti, it is sufficient to say that in the testimony as to what was found in the ruins of the burned house we think there was amply sufficient proof of the corpus delicti.

Criticism of the court's qualifying affirmance of defendant's third point does not seem to us warranted or that the answer was an invitation to find a verdict less than murder; particularly is this so when the entire charge is considered. Furthermore, the jury was warranted in discrediting that part of defendant's statement which absolved him from crime: Com. v. Rush, 277 Pa. 419, 423.

We are of opinion that when the entire charge is reviewed, it shows the court adequately submitted to the jury the question of the voluntariness and competency of appellant's statements to the police officers. The excerpt quoted and assigned for error does not embody the trial judge's whole thought as he expressed it.

Our conclusion from a careful reading of all the testimony being that appellant murdered his wife, we would disturb the verdict rendered only for weighty reasons, and such are not made manifest to us.

The judgment is affirmed.