Commonwealth *v.* Petrisko, Appellant.

576

Submitted September 28, 1970.   Before BELL, C. J.,
JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY,
JJ.

*George J. Petrisko*, appellant, in propria persona.

*Carol Mary Los* and *Robert W. Campbell*, Assistant
District Attorneys, and *Robert W. Duggan*, District
Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE O'BRIEN, March 18, 1971:

On November 26, 1967, Mary Husar, a recluse, was killed in her home in the City of Duquesne, Allegheny County. Her body was mutilated and her death was caused by a blow on the head, hemorrhage, strangulation and stab wounds.

Captain Richard L. Falchetti of the Duquesne Police Department received a call from appellant, George J. Petrisko, around 12:10 p.m. on November 26, 1967, to check on the home of Mary Husar. He immediately went to the house where he discovered the body. He was met by appellant, who volunteered the information that the evening before he was on his way home and was "accosted by three colored men." Appellant stated they used abusive language and threw a brick at him, striking him in the face. The police officer, after detailing two other officers to remain at the premises, returned to the station with the appellant, who volunteered to tell all he could to help the police. Captain Falchetti asked appellant if the police could examine the clothing that appellant was wearing the night before. The appellant stated he had no objection and called his mother to tell her that the police would be coming to take his jacket for examination. Captain Falchetti went to the appellant's home and was given a blue tanker-type jacket, which appellant said he was wearing the morning of November 26. This jacket was turned over to the County Crime Laboratory. County detectives made a thorough check in the community concerning events that occurred the evening of November 25 and the morning of the 26th and concluded that the Negroes mentioned by appellant were nonexistent.

A laboratory examination of the appellant's jacket revealed certain animal hairs and cloth fibers which were microscopically indistinguishable from hairs and fibers found on Mary Husar's body and on a paring

knife found in her kitchen. The hairs were also microscopically indistinguishable from hairs taken from the appellant's dog. A bloodstain on the kitchen floor matched the appellant's blood type, Type O, whereas the victim had Type AB. A girdle found in the bathroom sink had Blood Type O on it, and appeared as if it had been used to wipe someone's hands.

A crude club found in the kitchen was identified by a Mr. Andy Vereb, who testified that four and a half years before this date he was a carpenter; that he knew the appellant; that he worked with appellant on a house in which the appellant was a painter and he a carpenter; that the appellant asked him to fashion a club for him from a certain piece of material, which Mr. Vereb did and which club the appellant had taken home. Mr. Vereb identified the club which was shown him in court as being the club which he had made for appellant.

Pubic hairs found on the victim's body were identified as being definitely different from those of the victim but microscopically indistinguishable from those of the appellant.

Fingerprints labelled as "fresh" by the Commonwealth's witness, which were found on the base of a kerosene lamp in Mary Husar's home, were identical to those of the defendant. The fingerprints matched on sixteen points. Only seven to twelve points are necessary to make a positive identification. Kerosene from that lamp and matches were found on the kitchen floor near the body. The matchbook covers had the same labels as matchbooks found in the appellant's jacket.

This combination of circumstantial evidence convinced a jury of the appellant's guilt of the first degree murder of Mary Husar on November 26, 1967, and the appellant was sentenced to life imprisonment. Appellant filed this appeal pro se, the court having granted his motion for waiver of counsel.

Appellant first argues that the court erred in refusing to adjudicate appellant's pretrial pro se habeas corpus petition. At the time this petition was submitted, appellant was represented by the Public Defender's Office. On March 10, 1968, after being informed by the court that all matters pertaining to his case should be submitted to the Public Defender's Office, appellant informed the court that he desired to release the Public Defender's Office. Subsequently, appellant retained private counsel, Thomas W. Henderson, Esquire, to represent him, and Mr. Henderson, while filing numerous pretrial motions on the appellant's behalf, elected not to proceed on appellant's earlier petition for habeas corpus relief. There is nothing to show that such election was anything other than intelligently made by appellant's counsel. Under such circumstances, the court would not be expected to adjudicate the matters submitted prior to trial by the appellant acting on his own behalf.

Appellant's second major contention is that his shirt and jacket offered in evidence should not have been ruled admissible. However, the record of a suppression hearing held on the issue showed clearly that the appellant had given his consent to the police seeking to examine the clothes which he wore during the night of the alleged attack, and he had even called his mother to tell her to show the police his jacket. Under the circumstances, his contention that the search and seizure of these items was constitutionally invalid is without merit.

Appellant's third major contention is that on the basis of the record as a whole, the Commonwealth's evidence was insufficient to sustain the verdict of murder in the first degree. As we have frequently stated: ". . . [T]he test of the sufficiency of the evidence—irrespective of whether it is direct or circumstantial, or

both—is whether, accepting as true all the evidence and all reasonable inferences therefrom, upon which if believed the jury could properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime or crimes of which he has been convicted." *Commonwealth v. Frye,* 433 Pa. 473, 252 A. 2d 580 (1969), and cases cited therein.

In appellant's motions for a new trial or for an arrest of judgment, appellant's counsel emphasized that the Commonwealth's witness, Mr. Fox, of the Allegheny County crime laboratory, had admitted on cross-examination that with the exception of the fingerprints, in each case where evidence found on the victim was microscopically indistinguishable from evidence linked to the petitioner, i.e., the jacket fibers, the animal hairs, the pubic hairs, and the Type O bloodstains, it was impossible to say that both parts of the matching pairs of evidence came from the same source beyond a reasonable doubt. However, it is not necessary that each piece of evidence be linked to the defendant beyond a reasonable doubt. It is only necessary that each piece of evidence include the defendant in the group who could be linked while excluding others, and that the combination of evidence link the defendant to the crime beyond a reasonable doubt. This case can be distinguished from the case of *Commonwealth v. Crews,* 436 Pa. 346, 260 A. 2d 771 (1970), where we held that the circumstantial evidence was not sufficient to convict, because here the number of pieces of evidence linking the appellant to the crime was much more extensive than in *Crews,* where there were only three possible links between the suspect and the defendant, each one highly circumstantial.

Appellant also attacks the testimony of three of the Commonwealth's witnesses contending it was perjured.

However, these allegations amount, in each case, to attacks on the credibility and weight given to the testimony by the jury. It is well-settled law that on appeal, we must accept as true all of the Commonwealth's evidence upon which, if believed, the jury could have properly based its verdict and that such triers of fact can believe all, part or none of the evidence presented. *Commonwealth v. Terenda,* 433 Pa. 519, 252 A. 2d 635 (1969).

Appellant's next arguments relate to a statement which he made to the police on December 11, 1967. He argues, on the one hand, that since the statement was taken in the absence of counsel, it should not have been used to indict him. On the other hand, he urges that it was error for the Commonwealth to suppress the statement rather than use it at trial because it was somewhat exculpatory since the appellant stated that he was intoxicated during the killing. A suppression hearing was held before trial in which the statement was held to be properly admissible. However, we need not consider the propriety of that ruling since the question became moot when the statement was not used at trial. Appellant's contention that the prosecutor's failure to offer the statement was prejudicial to him is without merit. If appellant wanted to offer the defense of intoxication suggested by his statement, he could have done so. The Commonwealth's failure to use the statement in no way prejudiced him.

Appellant's next argument indicates that he believes that his defense of intoxication should have been offered. He argues that his trial counsel was incompetent in failing to raise that defense and in failing to offer an alibi defense mentioned in appellant's brief. The exact nature of appellant's alibi is only hinted at vaguely in appellant's brief.

As we said in *Com. ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A. 2d 349 (1967) : "Our task in cases of this nature . . . encompasses both an independent review of the record . . . and an examination of counsel's stewardship of the now challenged proceedings in light of the available alternatives." Here, after examining the record, we can find no fault with appellant's counsel's strategy which was concentrated on challenging the scientific testimony which linked the appellant to the crime. Appellant's intoxication evidence might have only created a further link in the jury's mind between the appellant and the crime. In a case where so much was at stake, the appellant being on trial for his life, we cannot say that appellant's counsel's representation was so lacking as to make "a mockery of justice."

Appellant's next argument concerns an alleged denial of the right to confront certain witnesses. Apparently this allegation is an attack on the proceedings at the jury selection where certain jurors admitted to hearing, outside the courtroom, certain inflammatory comments in regard to the crime for which appellant was charged. However, the record indicates that the jurors involved were extensively questioned by the court and counsel as to what they heard and the effect it might have on them as jurors. Each juror satisfied the court that no prejudice had occurred. In light of these circumstances, we do not find that appellant was prejudiced in being unable, personally, to cross-examine those persons who had attempted to inflame prospective jurors.

Finally, the appellant argues that he was deprived of his constitutional right to a speedy trial. This issue was disposed of in *Commonwealth v. Petrisko*, 432 Pa. 250, 247 A. 2d 581 (1968), where we held that the de-

lay in bringing the appellant to trial was caused by his own actions.

Judgment affirmed.

Mr. Justice COHEN took no part in the decision of this case.