Commonwealth *v.* Williams, Appellant.

Argued September 28, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MAN-DERINO, JJ.

*John P. Liekar,* Public Defender, for appellant.

*John F. Bell,* First Assistant District Attorney, with him *Royer J. Ecker,* Assistant District Attorney, and *Jess D. Costa,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE NIX, March 25, 1974:

Appellant, Violet Marie Williams, was arrested and indicted in Washington County for the murder of Myrtle C. Amos. A jury trial resulted in a verdict of guilty of murder in the first degree. The punishment was fixed at life imprisonment. Post-trial motions were denied and sentence was imposed. This appeal followed.

At trial appellant did not testify and the Commonwealth's evidence established the following facts:

Myrtle C. Amos, an eighty-six-year-old widow, resided in the rural community of Eighty-Four, Washington County. She was enjoying relatively good general health for her advanced age, but was barely able to walk as a result of a severe arthritic condition. She was confined to a wheelchair most of the time and when she did attempt to walk she needed the assistance of a cane. The appellant lived with Mrs. Amos and served as her housekeeper-companion.

About two p.m. on August 13, 1971, Ray W. Reynolds, an employee of the Columbia Gas Transmission Operations of Pennsylvania, while checking a gas well

on a farm in West Finley Township about thirty miles from Eighty-Four, noticed smoke rising from a wooded area about one-half mile away. Accompanied by Charles Edward Anderson, who was working on the well, he drove in a truck towards the site from whence the smoke was coming. As the men neared the area, they observed a maroon 1968 Buick automobile parked along the roadway and Mr. Reynolds wrote down the license number. It was later ascertained this license was issued for a Buick automobile registered in the name of the appellant.

After parking their vehicle and walking across an open field, Mr. Reynolds and Mr. Anderson located the fire at the foot of a steep embankment in a secluded area surrounded by woods. Heavy smoke and a foul odor was emanating therefrom. The appellant was seen standing by the fire with a stick in her hand. When she saw the men approaching she climbed the embankment, approached the nearest one and said everything was under control and that she was merely burning some garbage. When the man reproached her for throwing garbage in the area, she pleaded with him not to tell the police.

About 6 p.m. on August 13, 1971, the appellant visited the Pittsburgh National Bank in Washington City, Pennsylvania, and asked an employee if she had seen an elderly lady with a cane in the bank that day. The appellant, who was "disheveled" and appeared very nervous, explained that she had driven the elderly lady to the bank that afternoon about four o'clock and was to meet her later, but that the lady had not kept their appointment.

About 8 p.m. on August 13, 1971, appellant came to the headquarters of the Pennsylvania State Police in Washington City and reported Mrs. Amos missing. She told the officer in charge that about 4:30 that afternoon she had driven Mrs. Amos to a bank in Washington

City and made arrangement to pick her up in about two hours, but Mrs. Amos wasn't there when she returned and she was afraid Mrs. Amos "had wandered off somewhere". At the time of this interview, the appellant appeared very excited and bore evidence of bruises on the back of her hands and forearms.

On August 14, 1971, about 10 a.m., the appellant told a neighbor of Mrs. Amos, "Grams is gone . . . She got away from me." On August 14th, the appellant appeared at the post office where Mrs. Amos received her mail and notified the person in charge to stop all deliveries to Mrs. Amos until further notice.

On August 15, 1971, a state police officer assigned to the case visited the appellant to gain further details of Mrs. Amos' disappearance. During this interview, the officer observed not only the bruises on the appellant's hands and arms, but also that the hair on the right side of her head was singed and "had been cut away." Upon further investigation on the following day two buttons identified as belonging to a dress owned by Mrs. Amos were found on the garage floor.

Efforts by the police to locate Mrs. Amos during the days that followed were fruitless. Her neighbors reported last seeing her on August 12, 1971. None of the employees of the bank in Washington remembered seeing her on August 13th.

On August 26, 1971, Charles Edward Anderson, one of the men who had seen the appellant at the fire in West Finley Township on August 13th, after reading in the newspaper about Mrs. Amos' disappearance and that the appellant was her house companion, became curious and decided "to play detective." He returned to the site of the fire with a Mr. Clutter and upon observing a human skull in the remnants of the fire, he notified the police. After the police arrived on the scene, a portion of a charred, dismembered and decomposed human body was found in the residue of the fire.

Other dismembered portions of the body were located nearby. A medical expert opined that the body had been consumed by the fire about twelve to fourteen days before August 26th. Pieces of dress material and various personal articles were also found in the remains of the fire. These articles included a shoe, a pair of eyeglasses, two key chains, and the latch of a purse.

One key chain had two keys attached, one of which was found to fit the lock in the door of the garage on the Amos property. The other fit the front door of the Amos residence. The second key chain had a key and three rings attached. This key was for a safe deposit box rented by Mrs. Amos in a Washington, Pennsylvania, bank. The rings, one a wedding band, and another a diamond engagement ring were identified as the property of Mrs. Amos and worn by her while she was alive. The shoe was identified as belonging to Mrs. Amos. The dress material was identified as the same pattern as that in one worn by Mrs. Amos during her lifetime. The eyeglasses were identified by an optometrist as those having been prescribed for Mrs. Amos during her lifetime.

The appellant was taken into police custody on the night of August 26th. When told of the discovery earlier that day, and that two men had told the police they saw her at the fire on August 13th, she flatly denied ever having been in West Finley Township or knowing of any fire in that area. When confronted with the keys, rings and other items reclaimed from the fire residue, she said none of these were the personal belongings of Mrs. Amos to the best of her knowledge.

A medical doctor testified the skeleton found in the fire was that of Mrs. Amos. He based this conclusion on a comparison of X-rays taken of Mrs. Amos while she was a patient in a hospital during her lifetime and X-rays of a composite of the body parts found in and near the fire. Part of the difficulty in this case is oc-

casioned by the absence of any evidence as to the exact cause of death. The pathologist testified that in his opinion based on a reasonable degree of medical certainty, death was caused by burning and asphyxiation. He indicated that he arrived at this conclusion by the absence of any other evidence of major trauma sufficient to cause death except the fire. He admitted that by virtue of the burning and the decomposition his examination did not permit him to exclude all possible causes of death unrelated to trauma but reasoned that the attempt to conceal the body suggested a cause of death other than one of natural means. The trial court, apparently misunderstanding some of our decisions in this area, excluded the doctor's opinion because he determined that the doctor had not testified to the cause of death using the standard of reasonable doubt. To permit evidence of a medical opinion as to cause of death to be considered by the trier of fact it must be shown only that the witness entertained a reasonable degree of medical certainty for his conclusions. The test of reasonable doubt is a legal one and it is the test that the jury must use in determining whether the expert opinion taken together with all of the other evidence in the case warrants the finding of the cause of death as suggested by the expert, beyond a reasonable doubt. *Commonwealth v. Webb,* 449 Pa. 490, 496, 296 A. 2d 734 (1972). However, in determining the sufficiency of the evidence we can only consider that evidence which was before the fact-finder. Thus, although the court below should have permitted the jury to consider the pathologist's opinion as to the cause of death, since he did not, we may not now take this evidence into account.

Appellant first contends that the Commonwealth failed to prove the corpus delicti of the crime. To prove the corpus delicti in a murder case the Commonwealth must prove the death of the alleged victim by criminal

agency. It is well established in the law that the corpus delicti may be proved by circumstantial evidence, *Commonwealth v. Kravitz,* 400 Pa. 198, 161 A. 2d 861 (1960); *Commonwealth v. Lettrich,* 346 Pa. 497, 31 A. 2d 155 (1943), and the Commonwealth need only establish that the death was *consistent* with criminal agency. It is not essential that accident and suicide be affirmatively excluded. *Commonwealth v. Boykin,* 450 Pa. 25, 298 A. 2d 258 (1972); see also, *Commonwealth v. May,* 451 Pa. 31, 301 A. 2d 368 (1973). Through comparing X-rays of Mrs. Amos with the skeletal remains found at the fire site and through the identification of the personal belongings at the fire site, the death of Mrs. Amos was established.

The testimony established the victim could go nowhere by herself; that she could not walk without the assistance of a cane or another person, and could clearly not have walked unassisted in the area where her remains were found. Her persistent fear of falling made it her practice not to venture away from her home unattended. These facts, coupled with the evidence of the charred remains of the victim being found at a great distance from her home, at the foot of a very steep embankment, in a secluded area among the ashes of a large unexplained fire, vitiate the possibility of accident or suicide, and, at the very least, strongly suggests death by a criminal agency. Cf. *Commonwealth v. Kravitz, supra; Commonwealth v. Burns,* 409 Pa. 619, 187 A. 2d 552 (1963); *Commonwealth v. Lettrich, supra* and *Commonwealth v. Jones,* 297 Pa. 326, 146 A. 905 (1929).

Appellant also argues that the evidence is insufficient to establish that she committed murder in the first degree. The distinguishing feature of a non-felony murder is the presence of a willful, premeditated and deliberate intent to kill. However, such intent may be proved circumstantially, *Commonwealth v. Petrisko,*

442 Pa. 575, 275 A. 2d 46 (1971), and no particular length of time is required to form the requisite intent. *Commonwealth v. Carroll*, 412 Pa. 525, 533, 194 A. 2d 911 (1963); *Commonwealth v. Earnest*, 342 Pa. 544, 549, 21 A. 2d 38 (1941). The task of the appellate court in reviewing the sufficiency claim is to determine whether, accepting as true all the evidence and all reasonable inferences therefrom, upon which, if believed, the jury could properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime or crimes of which he has been convicted. *Commonwealth v. Bayard*, 453 Pa. 506, 309 A. 2d 579 (1973) and cases cited. We are satisfied that the jury was warranted in finding first degree murder under the facts of this case.

The evidence was overwhelming that Mrs. Amos could not and did not leave her home and travel distances unassisted and unattended, and that she could not have gotten to the area where her remains were discovered. The evidence established that if she had occasion to leave her home she was normally taken by the appellant-companion. The testimony of Mr. Reynolds and Mr. Anderson established that the fire where the remains were later found was in progress at or about two p.m. on August 13th and that appellant was present during the fire and was tending it. By appellant's statements she admitted that she was with the deceased that day until a time after it was determined that the fire had been in progress, and according to her testimony no other person was with the deceased at that time. The presence of a foul odor during the fire indicated that the body was being burned at the time appellant was observed as the sole person at the fire scene. Appellant admitted to the responsibility of starting the fire when she met Mr. Reynolds and Mr. Anderson on August 13th. The evidence provides a more than adequate basis for concluding that the ap-

pellant was with Mrs. Amos at the time of her death and was the person responsible for burning her body.

That appellant was responsible for the death can be found from the fact that at or about the time the killing occurred, appellant, by her own statements, admitted that she was the only one with the deceased. It is further corroborated by the testimony of Reynolds and Anderson that no one else was seen in the location other than appellant. The missing buttons from the dress of the deceased and the scratches and bruises observed on appellant, would suggest a struggle between the two. The elaborate deception employed by appellant to mislead police authorities into believing that the deceased had wandered away from the bank is further indication of a recognition of guilt by the appellant and an attempt to avoid the consequences for her criminal behavior. See *Commonwealth v. Kravitz, supra* at 217 and *Commonwealth v. Sauders,* 390 Pa. 379, 388-89, 134 A. 2d 890, 895 (1957).

It is apparent from the presence of a number of personal items of the deceased at the scene of the fire including the remnants of a pocketbook, keys, rings and eyeglasses that Mrs. Amos was alive when she left her home to begin the journey which resulted in her death. There is no conceivable explanation consistent with innocence that would suggest why appellant would take her ward to a secluded and deserted area approximately 30 miles from their home. That the killing was willful and deliberate and but a part of a well-planned attempt to kill and conceal is suggested by the well-conceived attempt at deception practiced by the appellant. The care with which the plan to divert suspicion from appellant was executed and the obvious attention to details contradict the possibility of a spontaneous cover-up following an accidental or unintentional killing. Under these facts a jury was able to conclude that the

entire design including the killing had received much prior thought and planning.

Appellant argues that the absence in the record of the exact cause of death prohibits a finding of murder and particularly a finding of murder in the first degree. However, we have previously held that where all the attendant circumstances clearly indicate a willful and deliberate plan to kill and where the Commonwealth's evidence establishes that death was caused by a criminal agency, the absence of evidence of the exact cause of death does not preclude a verdict of murder in the first degree. *Commonwealth v. Homeyer*, 373 Pa. 150, 94 A. 2d 743 (1953).

Accordingly, we hold that there was sufficient evidence to warrant a jury verdict of murder in the first degree and we hereby affirm the judgment of sentence.

Mr. Justice ROBERTS dissents.

---

DISSENTING OPINION BY MR. JUSTICE EAGEN:

In order to convict the defendant in this case of murder in the first degree, the burden was upon the Commonwealth to prove beyond a reasonable doubt that she had a specific intent to kill. It is true such intent may be established by circumstantial evidence, but whether the evidence be direct or circumstantial it must still meet the reasonable doubt standard, and is legally insufficient if it leads only to suspicion.[1] In short, the intent to kill may not be guessed or conjectured. In my view, the evidence instantly was legally insufficient to establish such an intent beyond a reasonable doubt,

---

[1] The principle that the Commonwealth must establish every element of the crime beyond a reasonable doubt is not only basic to our system of criminal justice, it is one of the major safeguards of the constitutional protection of due process of law. Cf. *In Re Winship*, 397 U.S. 358, 90 S. Ct. 1068 (1970).

and the jury's finding this intent existed was necessarily based on pure speculation.[2]

The record is completely barren of proof as to the circumstances of Mrs. Amos' death, as well as the cause of her death. Did Mrs. Amos die in the fire or was she dead beforehand? How did her death occur? These questions are just not answered in this record. I agree the proof and reasonable inferences arising therefrom would permit a finding the defendant was responsible for the death, and that she acted with malice, but to rule the proof was adequate to establish the necessary intent to kill requires mental gymnastics in which I refuse to engage.

Another glaring error in the majority opinion is the statement the trial court erred in excluding the Commonwealth's medical testimony as to the cause of Mrs. Amos' death. The only pertinent evidence found in the residue of the fire was a portion of a skeleton. Other pieces thereof were found several feet away and the medical witness offered the opinion the bones had been torn asunder by scavengers. The body organs, tissue and muscle were all missing. Despite this, the medical witness stated, "the most likely" or "the probable cause" of death was burning and/or asphyxiation. When asked to explain the basis for this conclusion, the witness stated: "In the absence of other evidence one would have to *assume*" and "I have no other evidence and this would have to be my assumption." Why the trial court erred in refusing to permit the *assumptions* of this witness to be considered by the jury escapes me.

---

[2] The majority opinion stresses the defendant's deceptive conduct and misleading statements in concluding the intent to kill was established, citing *Commonwealth v. Kravitz*, 400 Pa. 198, 161 A. 2d 861 (1960), and *Commonwealth v. Sauders*, 390 Pa. 379, 134 A. 2d 890 (1957). Although *Kravitz* and *Sauders* are authority for the proposition that deceptive conduct and misleading statements indicate guilt, these decisions do not say deceptive conduct and misleading statements indicate a specific intent to kill.

DISSENTING OPINION BY MR. JUSTICE MANDERINO:

I dissent. The burden is upon the prosecution to prove all of the elements of first degree murder. In this case, the prosecution had the burden of proving that the murder was a "wilful, deliberate and premeditated killing." Act of June 24, 1939, P. L. 872, §701, *as amended*, 18 P.S. §4701. There is no evidence that the murder met the statutory requirements.