401 A.2d 335

**COMMONWEALTH of Pennsylvania**

v.

**Merle Ronald GILMAN, Appellant.**

Supreme Court of Pennsylvania.

Argued March 9, 1979.

Decided May 1, 1979.

Richard H. Galloway, Daniel J. Ackerman, Greensburg, for appellant.

Albert M. Nichols, Dist. Atty., John F. Dent, Asst. Dist. Atty., Morrison F. Lewis, Jr., Greensburg, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO and LARSEN, JJ.

150

O'BRIEN, Justice.

A charge of murder was brought against appellant, Merle Ronald Gilman, in the Court of Common Pleas of Westmoreland County. · The case was transferred to Northampton · County after a motion for change of venue was granted. Appellant was convicted of murder of the first degree on a theory of felony-murder, pursuant to the 1939 Penal Code, the underlying felony being involuntary deviate sexual intercourse. We reversed and remanded for a new trial on the basis of improper remarks made by the prosecutor in his closing argument. *Commonwealth v. Gilman*, 470 Pa. 179, 368 A.2d 253 (1977). Appellant was again convicted of murder of the first degree and was sentenced to life imprisonment. He appeals the judgment of sentence.

Appellant was charged in connection with the death of Lee Ann Grimm. According to the testimony of Commonwealth witness Sandra Johnson (now Sandra McClintock), she and the decedent were hitchhiking in Westmoreland County during the evening of July 5, 1973, with the idea of going to Cramer in Indiana County. They were given two rides before being picked up by appellant near Ligonier, Westmoreland County, at ·approximately midnight. Appellant said he was going to Homer City, which is near Cramer, and agreed to drive decedent and McClintock there. He first drove to a bar in Johnstown, Cambria County, arriving there at approximately 12:30 a. m., bought some beer and continued to drive. He passed the road he should have taken to Homer City and after driving around for some time, he propositioned both women to submit to oral sex with him. Decedent and McClintock both said they would not consent and tried to dissuade him. Appellant continued to drive around and eventually stopped near Bolivar, Westmoreland County. Appellant then demanded that one of the · women get into the back seat with him. Both refused. Appellant then got out of the car, opened the trunk and took ·out a crowbar. Decedent, fearing what he would do with the crowbar, said she would do what he wanted. She

disrobed and got into the back seat with appellant. McClintock heard noises consistent with compliance with appellant's request. After about ten or fifteen minutes, appellant and decedent got out of the car, appellant tried to lift decedent onto the trunk, and the car bounced up and down for a few minutes. McClintock was in the car and did not know what was happening. After this, appellant demanded that McClintock engage in oral sex. She said she would not. He forcibly removed her from the car and she and decedent struggled with him. He beat both of them with an unidentified blunt object. McClintock lay still, as though she had fainted. Appellant continued to beat decedent and dragged her into the woods. McClintock fled and hid in some high grass. Appellant emerged from the woods alone, looking for McClintock with a flashlight. After he passed her by, McClintock went further into the woods, where she stayed until daylight. After trying unsuccessfully to find decedent, McClintock went to a house and called state police. They arrived at the scene, searched the area, and found decedent's body.

Dr. Gallicano Inguito, forensic pathologist, examined the body and found various injuries, including recent lacerations to the clitoris. He determined that death had been caused by blunt force injuries to the head and neck.

Appellant did not deny having killed decedent, but claimed that he acted in the heat of passion and with diminished capacity.

■ Appellant makes various allegations of error, including grounds on which he claims to be entitled to a discharge. One such ground is that trying appellant a second time constituted double jeopardy. The argument is waived because there was no motion to dismiss prior to the retrial. *Commonwealth v. Peters*, 473 Pa. 72, 373 A.2d 1055 (1977).

Appellant also claims that the Commonwealth did not prove cause of death by competent evidence. He argues that the Commonwealth depended on Dr. Inguito's testimony to establish the cause of death and that this was insuffi-

cient because it was not established with a reasonable degree of medical certainty.

■ The conclusions of a physician as to cause of death need not be held beyond a reasonable doubt. It is sufficient to show that they were held with a reasonable degree of medical certainty. *Commonwealth v. Williams*, 455 Pa. 539, 316 A.2d 888 (1974). Dr. Inguito's testimony indicated that he conducted a thorough examination of decedent's body. He described the body's condition in great detail and was able to give a medical opinion on the cause of death. Even though the words "reasonable degree of medical certainty" were not used, Dr. Inguito had ample basis for finding death from blunt force and he did not find any indication of death by any other cause. We hold that a reasonable degree of medical certainty may be found from the record, even though those words are not used. We find such a degree of medical certainty from the record in this case. Moreover, medical testimony is not required to prove the cause of death. *Commonwealth v. Ilgenfritz*, 466 Pa. 345, 353 A.2d 387 (1976). McClintock's testimony that appellant beat decedent with a blunt instrument and the subsequent discovery of decedent's body are evidence of the cause of death. That and the medical testimony establish a cause of death consistent with a criminal agency, which is all that must be shown. *Williams, supra.*

■ Appellant also argues that there was insufficient evidence to support a finding that appellant performed involuntary deviate sexual intercourse upon decedent. This would mean that the murder conviction could not be supported because of lack of evidence of the underlying felony. However, we reject appellant's allegation. McClintock testified that appellant expressed a desire to engage in oral intercourse, that neither she nor decedent were willing to engage in it, that decedent agreed to do so only after being placed in fear of being assaulted with a crowbar, and that appellant and decedent went to the back seat of appellant's car, stayed there long enough to perform oral intercourse, and made sounds consistent with its being performed. De-

cedent's clitoris was lacerated. We find that this was sufficient evidence.

Appellant alleges other errors as grounds for the granting of a new trial. One of these concerns the admission of a black and white photograph of decedent's body as it was discovered. The body is shown nude and lying face down in an area overgrown by vegetation. Appellant claims that several flies are shown on the body. We have examined the photograph and have found some obscure spots on the torso that could be flies, but we cannot positively identify them as such. Whatever they are, they are not prominent. There is one discernible fly on the left shoulder. Our examination would not have led us to suspect the presence of other flies if it had not been asserted by appellant.

Appellant claims that the photograph was inflammatory and of insufficient probative value. We do not agree. In *Commonwealth v. Petrakovich*, 459 Pa. 511, 329 A.2d 844 (1974), we held that the admission of a photograph of a corpse in a homicide case is within the discretion of the trial judge, whose decision is reversible only if that discretion is abused. A gruesome or potentially inflammatory photograph is admissible if its evidentiary value outweighs the likelihood that it will inflame the passions of the jury. A photograph that is found not to be inflammatory is admissible if it is relevant and can assist the jury in understanding the facts. We applied these standards in *Commonwealth v. Yost*, 478 Pa. 327, 386 A.2d 956 (1978), which involved the killing of three girls whose remains were not discovered for some time. A photograph taken at the place of discovery of the skeleton of one of the victims was admitted. It was not bloody and there was no obvious sign of violence. Under the circumstances, we found that it was not inflammatory and that it had evidentiary value in that it helped to show what had happened to the victims. The photograph in the instant case is similar in that it is not bloody and does not show any obvious sign of violence. We find that the alleged flies do not render it inflammatory because of their lack of prominence. We do not find it

necessary to decide what effect more discernible flies would have. By showing where the body was found, the photograph helps in determining what happened to the victim, giving it sufficient evidentiary value. We hold that it was not inflammatory and was properly admitted.

■ Appellant also alleges error concerning the nonappearance of Dr. Herbert Thompson, a psychiatrist who examined appellant and was listed as a witness on the indictment list by the Commonwealth. Thompson concluded on the basis of his examination that appellant was legally sane. He wrote a report expressing that opinion. The Commonwealth proposed to call him on the issue of capacity, which was raised by appellant. The Commonwealth contends that it was unable, after due diligence, to have Thompson present to testify. According to the Commonwealth, several unsuccessful attempts were made to subpoena him. It was then learned that he was in Las Vegas, Nevada. The Commonwealth took action under the Uniform Act To Secure Attendance of Witnesses, Act of June 23, 1941, P.L. 147, 19 P.S. §§ 622.1, et seq., and Thompson was ordered to appear on April 29, 1977. However, the case concluded on April 28. Appellant desired to call Thompson's absence to the attention of the jury and argued that it should be inferred that his testimony would have been adverse to the Commonwealth. Appellant argues that the court's refusal to permit that was error, relying upon *Commonwealth v. Jones*, 455 Pa. 488, 317 A.2d 233 (1974). *Jones* involved a murder case where there was a dispute as to the cause of the alleged victim's death. A physician who operated on the victim was the only one with knowledge of certain disputed matters related thereto. Through the fault of the prosecution, he was not available to testify and the defense was not given sufficient notice to call him. We held that the defense was entitled to a charge that it could be inferred that the physician's testimony would have been adverse to the prosecution.

The instant case is distinguishable from *Jones*. Appellant did not ask to call Thompson and did not at any time

contend that he would have called him if he had been available. Finding *Jones* to be inapplicable, we find the court acted properly in disallowing the proposed argument.

■ Appellant argues that a mistrial should have been granted because of remarks made by the prosecutor, in his closing argument, about decedent's lifestyle at the time of her death and what it might have been if she had lived. Appellant contends that the remarks improperly appealed to the jury's sympathy. The evidence showed that at the time of decedent's death, she was married and had two children, but was separated from her husband. McClintock was single. Decedent and McClintock had lived in a cabin with three men. At the time of trial, McClintock was married, living with her husband, who was employed, and two children, and was expecting a third. The prosecutor said that he did not approve of their lifestyle and then said:

". . . Sandy had a lifestyle, the same thing. She changed. She wasn't here today or the other day—after two years or three years, ever since this happened. She is married now, pregnant. I think she said her husband is working. I think Lee Ann Grimm had the same right. . . ."

After refusing to grant a mistrial, the judge said:

"You are directed to disregard any remarks that were made that might bring to your mind what the decedent might have done if she were alive today. It is not important in the case. It has nothing to do with the case and you shall disregard it in your deliberations. . . ."

■ Appellant contends that the instruction was inadequate to avoid prejudice. The lifestyles of decedent and McClintock were irrelevant to the case. The prosecutor's remarks about them should not have been made. That does not mean that the denial of the mistrial motion was error. In *Commonwealth v. Stoltzfus*, 462 Pa. 43, 337 A.2d 873 (1975), we said that whether improper prosecutorial remarks require the declaring of a mistrial depends on whether they are so unavoidably prejudicial as to prevent an unbiased

verdict. The effect depends upon the atmosphere of the trial, and the court has discretion to decide what action should be taken. The record in this case, as a whole, does not indicate a prejudicial atmosphere. We find that the impropriety of the prosecutor's remark was not so serious that the curative instruction could not avoid prejudice.

Appellant alleges that there was error in referring to the fact that appellant did not give any statement to the police after being arrested and given *Miranda* warnings. A state trooper testified to that on direct examination by the Commonwealth, and the prosecutor referred to it in his closing argument. Appellant claims that such reference to his exercise of his Fifth Amendment rights is prejudicial. He did not object to such reference either time it was made. Such evidence must be objected to when offered, or any argument of error is waived. *Stoltzfus, supra.* That ruling applies in this case and requires a finding of waiver.

Finally, appellant contends that the court's charge to the jury did not adequately define involuntary deviate sexual intercourse. There was no request for additional instructions and no exceptions were taken to the instructions as given. Hence the issue has not been preserved for appellate review.

The judgment of sentence is affirmed.

MANDERINO, J., files a concurring opinion.

ROBERTS, NIX and LARSEN, JJ., concur in the result.

MANDERINO, Justice, concurring.

I concur in the affirming of the judgment of sentence, but I do not agree with all the reasons stated. Appellant's double jeopardy claim is without merit, and he is therefore not entitled to a discharge. I cannot agree, however, that any waiver occurred. *Commonwealth v. Peters,* 473 Pa. 89, 373 A.2d 1064 (1977) (Manderino, J., dissenting opinion).

As to the photograph, I arrive at the same conclusion as the majority for different reasons. The photograph, as the

majority points out, is not obviously the photograph of a corpse and was not inflammatory. *Commonwealth v. Wade,* 480 Pa. 160, 174–175, 389 A.2d 560, 567 (1978) (Manderino, J., dissenting opinion).