J-S42006-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DANNY LEE NIXON | |
| Appellant | No. 1154 WDA 2013 |

Appeal from the Judgment of Sentence June 13, 2013
In the Court of Common Pleas of Allegheny  County
Criminal Division at No(s): CP-02-CR-0001502-2012

BEFORE:  PANELLA, J., JENKINS, J., and MUSMANNO, J.

MEMORANDUM BY PANELLA, J.               **FILED SEPTEMBER 12, 2014**

Appellant, Danny Lee Nixon, appeals from judgment of sentence entered on June 13, 2013, by the Court of Common Pleas of Allegheny County. We affirm.

On January 22, 2012, Sheila Robinson (the "victim") and Nixon were having a party in their apartment. Sometime during the party, Nixon began to argue with the victim. The victim then asked Nixon to leave the party. Nixon refused. The victim then decided to leave the apartment, but Nixon blocked the apartment door and refused to let her leave. Nixon then threw a dining room table at the victim, which struck the victim's legs causing bruising on her thigh.

The victim then tried to escape the apartment through the bedroom. Nixon, however, pinned her down onto the bed and began to choke her. The

victim's nephew was able to pull Nixon off of the victim. Nixon followed the victim into the kitchen. Nixon then pulled out a butcher knife and meat cleaver and told the victim that he was going to kill her. The nephew of the victim then entered the kitchen and successfully disarmed Nixon.

The victim then ran into the apartment bathroom where the bathtub was filled with hot water. Nixon attempted to push the victim into the water. The nephew was able to once again restrain Nixon while the victim ran back into the bedroom. Nixon next went to the bedroom and punched her four or five times in the ribs. The victim then testified that although she tried to leave the apartment seven times, she was unable to because of Nixon. The victim was ultimately able to leave the apartment and went to the UPMC Presbyterian Hospital.

Nixon was convicted on January 31, 2013 of two counts of simple assault, one count of unlawful restraint, and one count of terroristic threats. Immediately following Nixon's convictions the trial court imposed its sentence. Nixon subsequently filed a motion for post-sentence relief, which the trial court granted and issued a new sentencing order entered on June 13, 2013. This timely appeal follows.

We begin by addressing Nixon's contention that the Commonwealth failed to produce sufficient evidence to prove that the trial court had subject

matter jurisdiction over his criminal proceeding.[1] A challenge to the trial court's jurisdiction is a question of law for which our standard of review is *de novo* and the scope of review is plenary. **See Commonwealth v. Elia**, 83 A.3d 254, 265.

"All Courts of Common Pleas have original jurisdiction over criminal proceedings. The subject matter jurisdiction of a criminal court extends to the offenses committed within the county of trial." **Commonwealth v. McNeil**, 665 A.2d 1247, 1251 (Pa. Super. 1995) (citations omitted).

"The law is clear that the locus of the crime is always in issue, for the court has no jurisdiction [over] the offense unless it occurred within the county of trial, or unless, by some statute, it need not[.]" **Commonwealth v. Boyle**, 532 A.2d 306, 309-10 (Pa. 1987) (citation and internal quotation marks omitted). In order for the trial court to exercise jurisdiction over a criminal proceeding, some overt act of the crime must have taken place within the county in which the trial court sits. **See Elia**, 83 A.3d at 265.

Although the "Commonwealth bears the burden of proving facts sufficient to establish jurisdiction, it may rely upon circumstantial evidence to meet this burden." **Commonweatlh v. Passmore**, 857 A.2d 697, 709

---

[1] The Commonwealth notes that Nixon never questioned the trial court's subject matter jurisdiction in the trial court. **See** Appellee's Brief, at 11. In so doing, the Commonwealth does not maintain that the issue is waived, **see generally** Pa.R.A.P. 302(a), as a challenge to the trial court's subject matter jurisdiction cannot be waived. **See Commonwealth v. Antidormi**, 84 A.3d 736, 752 (Pa. Super. 2014).

(Pa. Super. 2004) (citation omitted). The subject matter jurisdiction of the trial court can be established through the presentation of *prima facie* evidence that a criminal act occurred within the territorial jurisdiction of the trial court. **See McNeil**, 665 A.2d at 1251.

Instantly, Nixon contends that the Commonwealth has failed to produce evidence that the trial court had subject matter jurisdiction over his criminal proceeding. Specifically, Nixon asserts that the Commonwealth failed to produce evidence that the crime took place in Allegheny County. There is sufficient evidence to find that the locus of Nixon's alleged criminal acts took place in Allegheny County.

The trial court, sitting as the finder of fact, heard consistent testimony from the witnesses that the events of the alleged crime took place at 5518 Broad Street Apartment #3, an address in Pittsburgh. **See** N.T., Bench Trial, 1/31/13, at 8. The trial court also heard that the responding officer, Officer David Derbish, was an employee of the City of Pittsburgh and stationed in the "Zone 5" section of the city. **Id**. at 47. Furthermore, the trial court heard evidence that the victim was taken to UPMC Presbyterian Hospital, located in Pittsburgh, to treat her injuries. **See id**. at 48. Pittsburgh is, of course, located in Allegheny County.

As the trial court was the factfinder, it was welcome to draw all reasonable inferences from this evidence. The trial court drew the reasonable inference that Officer Derbish responded to the scene of the

crime within his lawful jurisdiction: the City of Pittsburgh, Zone 5. In conclusion, we find that there is sufficient evidence to sustain the trial court's exercise of subject matter jurisdiction.

We next address Nixon's challenge that the Commonwealth presented insufficient evidence to uphold his conviction of unlawful restraint. We first begin by noting our standard of review. A claim challenging the sufficiency of evidence is a question of law. *See Commonwealth v. Smith*, 853 A.2d 1020, 1028 (Pa. Super. 2004). The evidence adduced at trial must be viewed in the light most favorable to the verdict winner to determine whether there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. *See Commonwealth v. Walker*, 874 A.2d 667, 677 (Pa. Super. 2005). Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. *See id*. The Commonwealth is entitled to all reasonable inferences arising from the evidence and all facts which the Commonwealth's evidence tends to prove are treated as admitted. *See Commonwealth v. Hunter*, 768 a.2d 1136, 1142 (Pa. Super. 2001). We must determine whether, "accepting as true all the evidence and all reasonable inferences therefrom, upon which, if believed, the jury could properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime or crimes of which

he has been convicted." *See Commonwealth v. Williams*, 316 A.2d 888, 892 (Pa. 1974).

Nixon contends that the Commonwealth failed to produce sufficient evidence to prove that Nixon placed the victim under circumstances that placed her in danger of suffering serious bodily injury or detained the victim in a condition of involuntary servitude. The Crimes Code defines unlawful restraint as follows:

> (a) Offense defined – Except as provided under subsection (b) or (c) a person commits a misdemeanor of the first degree if he knowingly:
> 1. Restrains another unlawfully in circumstances exposing him to risk of serious bodily injury; or
> 2. Holds another in a condition of involuntary servitude.

18 Pa.C.S.A. § 2902(a). The Crimes Code defines serious bodily injury as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of any bodily member or organ." 18 Pa.C.S.A. § 2301.

In order to determine if the defendant exposed a victim to risk of serious bodily injury, we may look at the totality of the circumstances. *See Commonwealth v. Schilling*, 431 A.2d 1088, 1092 (Pa. Super. 1981). In examining the totality of the circumstances, the Commonwealth must present evidence sufficient to show that the victim was exposed to an actual danger of serious bodily injury. *See Commonwealth v. Melvin*, 572 A.2d 773, 775 (Pa. Super. 1990); *Schilling*, 431 A.2d at 1092.

We find that there is sufficient evidence to uphold the conviction; it is clear that he exposed his victim to the risk of serious bodily injury. Nixon would have us find that the Commonwealth did not present sufficient evidence because there was no evidence that the victim sustained or that Nixon caused the victim to have an actual injury that meets the statutory definition of a "serious bodily injury." Such an argument is meritless, however, as both the Crimes Code and our case law require that the defendant need only expose the victim to the *risk* of serious bodily injury in order to be convicted of the crime of unlawful restraint.

Here, the Commonwealth presented evidence that the victim was restrained in her apartment in a factual scenario that was without question inherently dangerous. The record indicates that Nixon threw a table at the victim, choked her to a point where she could not breathe, threatened to kill her at knifepoint (and with a meat cleaver), then attempted to push her into scalding water, and finally punched her several times in the mid-section. The victim sustained injuries. The record also indicates that Nixon was enraged and obviously truly determined to harm his victim.

It further shows that the victim was so encumbered by Nixon that her nephew was needed on multiple occasions during this prolonged struggle to rescue her and subdue Nixon, lest Nixon cause graver injuries to the victim. All of this was done while Nixon restrained the victim from leaving the apartment as he chased her from room to room.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/12/2014