729 A.2d 566

COMMONWEALTH of Pennsylvania, Appellee,

v.

William MIKELL, Appellant.

Supreme Court of Pennsylvania.

Argued Feb. 1, 1999.

Decided April 23, 1999.

Jay S. Gottlieb, Philadelphia, for William Mikell.

Catherine Marshall, Helen Kane, Philadelphia, for Com.

Robert A. Graci, Harrisburg, for Office of Atty. Gen.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

512

*OPINION*

SAYLOR, Justice.

Appellant, William Mikell ("Mikell"), appeals from the sentence of death imposed after a jury found him guilty of the first-degree murder and robbery of Joseph P. Johnston, a taxicab driver.

Shortly after midnight on May 22, 1987, Mikell arrived at the home of Anthony Rice ("Rice") at 6024 Walnut Street in Philadelphia. At the time, Rice was sitting on the porch along with his younger brother, Joseph, Narvell Coleman ("Coleman"), and two men identified only as Rob and Alfred. The group remained on the porch throughout the early morning hours, talking and smoking marijuana. At one point, Mikell announced that he wanted to get some money to go to a show and produced a handgun. At approximately 5:00 a.m., LeRoy Shelly, the next-door neighbor of the Rices, was awakened by the noise from the group and went to his front door. Apparently, this prompted Mikell and the others to leave the porch, and Mikell, the Rice brothers, and Coleman walked along Walnut Street. Eventually, Joseph Rice parted company with the others, who continued in the direction of Market Street.

At about the same time, Mr. Johnston, having completed a twelve-hour shift for the United Cab Company, returned to the cab depot and was advised that another cab was available. At approximately 6:00 a.m., Mr. Johnston's cab was observed parking along Sansom Street near the intersection of 60th Street.

While Mikell, Rice, and Coleman were walking, Mikell again stated that he wanted money. Shortly thereafter, the group happened upon Mr. Johnston's cab on Sansom Street. Upon seeing the cab, Mikell ran toward it, opened the rear door, and climbed into the back seat, while Rice and Coleman acted as lookouts from the street corner. Mikell demanded money, he struggled with Mr. Johnston, and ultimately shot him. Mikell then took Mr. Johnston's money and fled along 59th Street. Rice and Coleman also fled, running down 60th Street. Mr. Johnston was found dead later that same morning, the cause

of death being a close-range gunshot wound behind his left ear.

On the evening of May 22, Rice related to Mr. Shelly that Mikell had shot and killed a cab driver. The following day, Mr. Shelly questioned Rice to confirm the story and later reported the information to a friend who was a police officer. When the police interviewed Rice, he denied having any involvement in the crime, but he inculpated Mikell. Based upon Rice's statement, Mikell was arrested for murder, robbery, and possession of an instrument of crime. A search warrant was also issued for the separate homes of Mikell's father, mother, and paternal grandfather; however, no evidence connecting Mikell to the robbery or murder was found during those searches.

On July 1, 1988, Mikell's jury trial ended in a mistrial after the jury was unable to agree upon a verdict. On January 18, 1989, a second jury trial commenced, during which the Commonwealth presented testimony from, *inter alia,* the police officers who investigated the crime scene, Malverse Fleming, who observed Mr. Johnston's cab on the morning of the crime, and an assistant medical examiner, who testified regarding the results of the autopsy. The only eyewitness testimony was from Rice.[1] Prior to testifying, Rice admitted to the district attorney that he had lied about his role in the robbery and acknowledged that he knew about the incident and had acted as a lookout. As a consequence of his admission, Rice was granted immunity from the use of his testimony. *See* 42 Pa.C.S. § 5947 (immunity of witnesses). The Commonwealth also sought to prove circumstantially that Mikell was living at the business operated by his paternal grandfather, Abdullahi Suleiman, which was located at 146 South 60 th Street and was within a few blocks of the crime scene.

Mikell presented an alibi defense based upon the testimony of his mother, Sylvia Mikell, and his sister, Sylvette Mikell, who stated that he was sleeping at his mother's home at 5608 Gibson Drive at the time of the crime. In addition, the

1. Apparently, the Commonwealth was unable to call Coleman as a witness.

defense attempted to impeach Rice based upon an exculpatory statement that he had provided to a defense investigator.

At the conclusion of the trial, the trial court charged the jury. No instruction, however, was issued regarding Mikell's alibi defense, as trial counsel failed to request one. The jury found Mikell guilty of all charges, and the case proceeded to the penalty phase.

At the penalty hearing, the Commonwealth incorporated the record from the guilt phase and argued as an aggravating circumstance that Mikell had committed the murder during the perpetration of a felony (robbery). *See* 42 Pa.C.S. § 9711(d)(6). The defense sought to establish, as mitigating circumstances, Mikell's age (19 years), his lack of a significant history of prior criminal convictions, his lack of capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law, and the general or catchall mitigating circumstance. *See* 42 Pa.C.S. § 9711(e)(1), (3), (4), and (8). Following deliberations, the jury returned a verdict of death, finding that the murder was committed during the perpetration of a felony, and that there were no mitigating circumstances.

Thereafter, trial counsel filed post-verdict motions on Mikell's behalf. Mikell also filed various *pro se* motions, alleging, in significant part, that his counsel had been ineffective in failing to request an alibi instruction. Over the course of several years, Mikell was represented by a series of court-appointed attorneys and, during the disposition of post-verdict motions, by privately retained counsel. Although the trial court issued a draft opinion dated December 4, 1991, indicating its intention to deny post-verdict motions, an argument on those motions was not held on until February 14, 1995. At the conclusion of the argument, the trial court formally denied the motions and re-imposed the death sentence.[2] In addition, the

2. The trial court's formal opinion was not filed until June 12, 1996, over seven years after the entry of the verdict. Although there appears to have been some difficulty in securing a portion of the notes of testimony, the record does not otherwise disclose the reason or reasons

trial court imposed concurrent sentences of ten to twenty years' imprisonment for the robbery conviction and one to two years' imprisonment for possession of an instrument of crime.

In all cases in which the death penalty has been imposed, we are required to review the sufficiency of the evidence. *See Commonwealth v. Zettlemoyer,* 500 Pa. 16, 26 n. 3, 454 A.2d 937, 942 n. 3 (1982), *cert. denied,* 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983). To establish murder in the first degree, the Commonwealth must prove, *inter alia,* that the defendant specifically intended to kill, which fact is established by proof of premeditation and deliberation. *See Commonwealth v. Weinstein,* 499 Pa. 106, 115, 451 A.2d 1344, 1348 (1982). A specific intent to kill may be proven by circumstantial evidence, *see Commonwealth v. Williams,* 455 Pa. 539, 546, 316 A.2d 888, 891 (1974), and can be inferred from the defendant's use of a deadly weapon on a vital part of the victim's body. *See Commonwealth v. Hall,* 549 Pa. 269, 282, 701 A.2d 190, 196 (1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1534, 140 L.Ed.2d 684 (1998). Where a defendant knowingly applies deadly force to the victim, his specific intent is as evident as if he expressed the intent to kill at the time the force was applied. *See Commonwealth v. Auker,* 545 Pa. 521, 539, 681 A.2d 1305, 1315 (1996). Furthermore, no particular period of premeditation is required to form the requisite intent. *See Williams,* 455 Pa. at 547, 316 A.2d at 891.

In this case, the Commonwealth established through eyewitness testimony and forensic evidence that Mikell entered Mr. Johnston's cab, demanded money, struggled with him, placed a gun within four to six inches of the back of his head, and fatally shot him. Such proof provided a more than adequate basis for the jury to conclude that Mikell committed the crime with the specific intent to kill. Mikell contends, however, that this evidence was only sufficient to establish murder in the second degree. The difference between first-degree and second-degree murder lies in the requisite malice.

for the inordinate delay that attended the disposition of Mikell's post-verdict motions.

Where first-degree murder requires a specific intent to kill (actual malice), the malice essential to the crime of second-degree murder is imputed to the defendant from the intent to commit the underlying felony, regardless of whether the defendant actually intended to physically harm the victim. *See Commonwealth v. Holcomb,* 508 Pa. 425, 467, 498 A.2d 833, 855 (1985), *cert. denied,* 475 U.S. 1150, 106 S.Ct. 1804, 90 L.Ed.2d 349 (1986). Here, Mikell's act of placing a gun to the back of Mr. Johnston's head and pulling the trigger evinced actual malice that was distinct from the intent associated with the underlying felony of robbery.

■ Mikell also argues that Rice's testimony was so inconsistent and incredible that it cannot be relied upon to support the verdict. To the extent that this argument can be construed as a sufficiency challenge, however, the determination as to the credibility of Rice's testimony was within the province of the jury, and Mikell's argument does not otherwise provide a basis for concluding that the verdict is not supported by sufficient evidence. *See Commonwealth v. Goldblum,* 498 Pa. 455, 466–67, 447 A.2d 234, 240 (1982); *see also Commonwealth v. Manchas,* 430 Pa.Super. 63, 73, 633 A.2d 618, 623 (1993), *appeal denied,* 539 Pa. 647, 651 A.2d 535 (1994). Moreover, a verdict may be predicated upon the uncorroborated testimony of an accomplice. *See Commonwealth v. Hudson,* 489 Pa. 620, 628, 414 A.2d 1381, 1385 (1980). Thus, the record is sufficient to support the jury's verdict.

■ While Mikell raises numerous other claims for a new trial and/or a new penalty hearing, our disposition of his challenge relating to the failure of his trial counsel to request an alibi instruction renders any discussion of the remaining allegations of error unnecessary. Although Mikell has framed this issue in terms of trial error, his argument is premised upon the contention that his counsel's failure constituted ineffective assistance of counsel. To succeed on an allegation of ineffective assistance, Mikell must demonstrate that his underlying claim is of arguable merit; that counsel lacked a reasonable basis for failing to request an alibi instruction; and that

counsel's ineffectiveness prejudiced the defense. *See Commonwealth v. Pierce,* 537 Pa. 514, 524, 645 A.2d 189, 194–95 (1994).

An alibi is defined as " 'a defense that places the defendant at the relevant time at a different place than the scene involved and so removed therefrom as to render it impossible for him to be the guilty party.' " *Commonwealth v. Kolenda,* 544 Pa. 426, 431, 676 A.2d 1187, 1190 (1996)(quoting *Commonwealth v. Johnson,* 538 Pa. 148, 151, 646 A.2d 1170, 1172 (1994)). Where such evidence has been introduced, a defendant is entitled to an alibi instruction to alleviate the danger that the jurors might impermissibly view a failure to prove the defense as a sign of the defendant's guilt. *See Commonwealth v. Pounds,* 490 Pa. 621, 633–34, 417 A.2d 597, 603 (1980). Moreover, an alibi defense, either standing alone or together with other evidence, may be sufficient to leave in the minds of the jury a reasonable doubt that might not otherwise exist, *see Commonwealth v. Willis,* 520 Pa. 289, 293, 553 A.2d 959, 961 (1989), and the defendant is entitled to an instruction to this effect.

Here, Mikell presented two alibi witnesses, his mother and sister, and both testified that Mikell was, at all relevant times, asleep at his mother's home. Notably, the Commonwealth does not argue that such evidence failed to meet the definition of an alibi. *Cf. Commonwealth v. Collins,* 549 Pa. 593, 604, 702 A.2d 540, 545 (1997)(concluding that an alibi instruction was not required, as the appellant's defense did not render him so far removed that he could not possibly have committed the crime), *cert. denied,* —— U.S. ——, 119 S.Ct. 92, 142 L.Ed.2d 73 (1998). Hence, Mikell's claim is of arguable merit.

The Commonwealth contends, however, that trial counsel reasonably decided to forgo an alibi instruction because his witnesses were not "particularly compelling," [3] and

---

**3.** The Commonwealth's assertion in this regard is based, in significant part, upon the fact that this defense was not completely successful at Mikell's first trial, as it ended in a hung jury.

because such an instruction may have distracted the jury from the "critical issue of Rice's credibility." Such a contention is not supported by the record.[4] Because counsel presented an alibi defense and argued this defense to the jury, an instruction regarding its significance was necessary. The fact that Rice's credibility was placed before the jury does not excuse the failure to request an instruction as to the substantive defense presented. As noted, alibi evidence, even if not wholly believed, together with other evidence, may raise a reasonable doubt. *See Pounds,* 490 Pa. at 633, 417 A.2d at 603. Consequently, we can discern no reasonable basis for counsel's dereliction.

The Commonwealth also asserts that the absence of an alibi instruction did not result in prejudice, as the jury's decision turned on its assessment of Rice's credibility. As a result, the Commonwealth argues, the strength or weakness of Mikell's alibi did not enter into the jury's decision. Similarly, the trial court reasoned that an alibi instruction was unnecessary, because the alibi defense was presented to the jury, which apparently chose to believe the witnesses for the Commonwealth, as opposed to those for the defense. Both the Commonwealth's argument and the trial court's reasoning, however, fail to acknowledge that one of the purposes of an alibi instruction is to ensure that a jury does not interpret the failure to prove the defense as evidence of a defendant's guilt. Furthermore, since the jury was never informed how to assess Mikell's alibi evidence, he was effectively deprived of a substantive defense. Under the circumstances, counsel's inexplicable failure to request an alibi instruction constituted constitutionally ineffective assistance of counsel such as to entitle Mikell to a new trial. *See Commonwealth v. Roxberry,* 529 Pa. 160, 166, 602 A.2d 826, 829 (1992); *see also Common-*

---

4. Although the trial court mentioned during the argument on post-verdict motions that it recalled trial counsel stating that he did not seek an alibi instruction "because it would be totally unbelievable," as the trial court later noted, the record does not reflect any such statement, and it was not relied upon in the denial of post-verdict relief. It is also noteworthy that post-verdict counsel requested the opportunity to present testimony from trial counsel on this issue, which request the trial court denied.

*wealth v. Gainer*, 397 Pa.Super. 348, 356, 580 A.2d 333, 337 (1990)(*en banc* ), *appeal denied,* 529 Pa. 645, 602 A.2d 856 (1992).[5]

Accordingly, the judgment of sentence is reversed and the case is remanded for a new trial.

5. In the alternative, the Commonwealth suggests that we should remand this case for an evidentiary hearing to determine if trial counsel had a reasonable basis for his decision. However, as it is clear from the record that counsel was ineffective, we can resolve this issue without a remand, *see Commonwealth v. Pursell,* 555 Pa. 233, 251–55, 724 A.2d 293, 303–04 (1999), which would merely add to the considerable delay that has already occurred in this matter.