J-S21005-18

2018 PA Super 249

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ROBERT EDWARD CRISSMAN, JR. | : | |
| | : | |
| Appellant | : | No. 1873 WDA 2016 |

Appeal from the Judgment of Sentence June 28, 2016
In the Court of Common Pleas of Armstrong County Criminal Division at
No(s): CP-03-CR-0000669-2015

BEFORE: OLSON, J., MURRAY, J., and FORD ELLIOTT, P.J.E.

OPINION BY OLSON, J.:                                     **FILED SEPTEMBER 06, 2018**

Appellant, Robert Edward Crissman, Jr., appeals from the judgment of sentence entered on June 28, 2016, as made final by the denial of his post-sentence motion on November 8, 2016. We affirm.

The factual background and procedural history of the case are as follows. At approximately 6:30 a.m. on the morning of July 30, 2015, Appellant, an inmate at the Armstrong County Jail, escaped into the nearby woods. After discarding his shirt, which identified him as an inmate at the Armstrong County Jail, Appellant continued through the woods, eventually finding his way to the home of the victim, Tammy Long (Long), and her live-in boyfriend, Terry Slagle (Slagle). Appellant knew both of them and had previously been to their home.

Appellant told the couple that he was having car trouble and needed a ride to Kittanning, which Long offered. Shortly thereafter, Slagle was picked

up by his father and taken to work, leaving Long and Appellant alone in the house. Appellant then proceeded to tie Long to the handles of a cabinet beneath her bathroom sink, where he bludgeoned her with a toilet tank lid, causing it to shatter. According to the testimony of Dr. Cyril Wecht, Long died of strangulation, which took four to six minutes to occur, rather than from repeated head trauma.

A neighbor saw Appellant leave Long's home in Slagle's truck around 8:30 a.m. Thereafter, Appellant arrived at the home of a friend, David Reesman, at approximately 10:00 a.m. Nearly 24 hours later, Appellant was spotted stealing another truck, whereupon he was apprehended.

On July 31, 2015, the Commonwealth charged Appellant with 12 different offenses, including first-degree murder, second-degree murder, robbery - inflicting serious bodily injury upon another, robbery of a motor vehicle, and escape. On May 12, 2016, a jury convicted Appellant of one count of first-degree murder (18 Pa.C.S.A. § 2502(a)), one count of second-degree murder (18 Pa.C.S.A. § 2502(b)), and one count of escape (18 Pa.C.S.A. § 5121(a)). The court, on June 28, 2016, sentenced Appellant to two concurrent life terms for his first and second-degree murder convictions and to not less than 18 months nor more than 84 months for his escape conviction. The court also directed that Appellant's sentence for escape should run

concurrent to his life terms. Appellant filed a post-sentence motion on July 8, 2016, which was denied on November 8, 2016. This timely appeal followed.[1]

Appellant claims the trial court violated his constitutional protection against double jeopardy by imposing separate, but concurrent, sentences for his first and second-degree murder convictions. **See** Appellant's Brief at 9. This claim directly implicates the legality of Appellant's sentence,[2] so our standard of review is *de novo* and the scope of our review is *plenary*. **Commonwealth v. Baldwin**, 985 A.2d 830, 833 (Pa. 2009), *citing* **Commonwealth v. Collins**, 764 A.2d 1056 (Pa. 2001).

"The double jeopardy protections afforded by the United States and Pennsylvania Constitutions are coextensive and prohibit successive prosecutions and multiple punishments for the same offense." **Commonwealth v. Miskovitch**, 64 A.3d 672, 685 (Pa. Super. 2013). "Impermissible multiple punishment can take the form of consecutive sentences or, as here, concurrent sentences." **Commonwealth v. Houtz**,

_____

[1] Appellant filed a notice of appeal on December 7, 2016. On December 8, 2016, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). After several substitutions of counsel, current counsel was appointed on January 30, 2017. Thereafter, on February 9, 2017, Appellant requested leave to file his concise statement *nunc pro tunc*. A concise statement was ultimately filed on March 16, 2017. The trial court issued its Rule 1925(a) opinion on April 6, 2017.

[2] "The phrase illegal sentence is a term of art in Pennsylvania [] that is applied to three narrow categories of cases[, including claims involving merger/double jeopardy[.]" **Commonwealth v. Munday**, 78 A.3d 661, 664 (Pa. Super. 2013).

- 3 -

437 A.2d 385, 348 (Pa. 1981). Merger principles safeguard criminal defendants from double jeopardy violations by guiding judicial inquiry into whether multiple punishments have been imposed for the same offense. *Miskovitch*, 64 A.3d at 685.

In Pennsylvania, merger is governed under 42 Pa.C.S.A. § 9765, which provides:

> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S.A. § 9765. The statute establishes two requirements for merger of offenses: (1) the crimes arise from a single criminal act; and (2) all of the statutory elements of one of the offenses are included in the statutory elements of the other offense. *Baldwin*, 985 A.2d at 833. *Baldwin* holds that our General Assembly intended to preclude merger of offenses where each requires proof of an element the other does not. *Id.* at 834-835.

We begin our merger analysis under section 9765 by setting forth the elements of first and second-degree murder.[3] The Crimes Code defines first-degree murder as a criminal homicide committed by an intentional killing. 18 Pa.C.S.A. § 2502(a). An intentional killing is a "killing by means of poison,

---

[3] There is no dispute that the charges for first and second-degree murder arose from a single act. *See Commonwealth v. Jenkins*, 96 A.3d 1055, 1060 (Pa. Super. 2014), *appeal denied*, 104 A.3d 3 (Pa. 2014).

or by lying in wait, or by any other kind of willful, deliberate and premeditated killing." 18 Pa.C.S.A. § 2502(d). To prove first-degree murder, the Commonwealth must show "that a human being was unlawfully killed, the defendant perpetrated the killing, and the defendant acted with malice and a specific intent to kill." *Commonwealth v. Montalvo, M.*, 986 A.2d 84, 92 (Pa. 2009), *quoting* **Commonwealth v. Kennedy**, 959 A.2d 916, 921 (Pa. 2008).

A criminal homicide constitutes second-degree murder, or "felony murder," if "it is committed while [the] defendant was engaged as a principal or an accomplice in the perpetration of a felony." 18 Pa.C.S.A. § 2502(b). Enumerated felonies include: robbery, rape, deviate sexual intercourse by force or threat of force, arson, burglary, and kidnapping. 18 Pa.C.S.A. § 2502(d). The *mens rea* element of second-degree murder is inferred from the commission of the underlying felony. **Commonwealth v. Tarver**, 426 A.2d 569, 573 (Pa. 1981) ("As applied in Pennsylvania, common law felony-murder is a means of imputing malice where it may not exist expressly. Under this rule, the malice necessary to make a killing, even an accidental one, murder, is constructively inferred from the malice incident to the perpetration of the initial felony."), *quoting* **Commonwealth v. Yuknavich**, 295 A.2d 290, 292 (Pa. 1972); **see also Commonwealth v. Mikell**, 729 A.2d 566, 569 (Pa. 1999) ("[T]he malice essential to the crime of second-degree murder is imputed to the defendant from the intent to commit the underlying

felony, regardless of whether the defendant actually intended to physically harm the victim.").

To determine if Appellant's murder convictions merge for sentencing purposes, we compare the elements of his crimes to ascertain whether all of the statutory elements of one of the offenses are included in the statutory elements of the other offense. *See Baldwin*, 33 A.3d at 116. We accomplish this by asking if one offense requires proof of a fact the other does not. At the outset, we note that second-degree murder requires the perpetration of an enumerated felony, while first-degree murder does not include such a requirement. Thus, second-degree murder does not merge with first-degree murder for sentencing purposes. We therefore turn to whether first-degree murder merges with second-degree murder. Because first-degree murder, like second-degree murder, requires a criminal homicide committed by the defendant, our analysis of this question comes down to whether the specific intent to kill (required for first degree murder) involves proof of a fact that is not essential to the element of malice, which is inferred from a second-degree murder defendant's participation in an enumerated felony. For the reasons that follow, we hold that the "specific intent to kill" element of first-degree murder involves proof of facts that are not essential for establishing second-degree murder and, therefore, the offenses cannot merge for sentencing purposes.

Our Supreme Court has noted that the "specific intent to kill" carries an enhanced evidentiary burden which differentiates it from the malice inferred from a second-degree murder defendant's commission of an enumerated felony. In **Mikell**, the defendant attempted to rob the victim before killing him. He argued, therefore, that while the evidence may have been sufficient to prove second-degree murder, it was insufficient to establish first-degree murder since it lacked proof of a specific intent to kill. **Mikell**, 729 A.2d at 569. The Court affirmed the defendant's first-degree murder conviction, noting that circumstantial evidence showing the use of a deadly weapon upon a vital area of the body demonstrated a specific intent to kill. **Id.** In reaching this determination, the Court differentiated between "actual malice" and the malice inferred from the commission of a felony (*i.e.*, the *mens rea* elements of first and second-degree murder):

> The difference between first-degree and second-degree murder lies in the requisite malice. Where first-degree murder requires a specific intent to kill (actual malice), the malice essential to the crime of second-degree murder is imputed to the defendant from the intent to commit the underlying felony, regardless of whether the defendant actually intended to physically harm the victim.

**Id.**; **see also Fuller v. United States**, 407 F.2d 199, 1224 (D.C. Cir. 1968) ("[First and second-degree murder] are distinct in the sense that they have different elements. One requires that the slaying be done with 'deliberate and premeditated malice,' the other requires that the killing occur in the course of certain enumerated felonies."). **Mikell** shows that "specific intent to kill" requires, in all cases, proof of a willful, deliberate, and premeditated killing

that inferred or imputed malice does not. Thus, first-degree murder does not merge with second-degree murder for sentencing purposes.

Notwithstanding the above, Appellant argues that the imposition of two concurrent life sentences for the killing of one individual constitutes impermissible multiple punishment in violation of his rights against double jeopardy. *See* Appellant's Brief at 9. Citing ***Commonwealth v. Walker***, 362 A.2d 227 (Pa. 1976) and ***Commonwealth v. Owens***, 649 A.2d 129 (Pa. Super. 1994), Appellant argues that "[a]n individual may only be punished once for a single act which causes a single injury to the Commonwealth." Appellant's Brief at 11, *quoting* ***Owens***, 649 A.2d at 137. Although Appellant acknowledges that first-degree murder and second-degree murder have different elements, he asserts that this is not dispositive of whether there is more than one injury to the Commonwealth. *See* Appellant's Brief at 13. Instead, Appellant argues that, where an intentional killing has occurred, only the Commonwealth's interest in deterring deliberate killings is implicated and the occurrence of a killing during the course of an enumerated felony becomes irrelevant. *See* Appellant's Brief at 14. In such circumstances, Appellant concludes that the Commonwealth sustains only one injury and may only impose a single punishment.

Prior to the adoption of § 9765, our Supreme Court held that "[a]nalysis of [duplicative] sentence questions [traditionally] revolved around the concept of injury to the sovereign, in this case the Commonwealth." ***Commonwealth***

*v. Walker*, 362 A.2d 227, 231 (Pa. 1976).  To support the imposition of two punishments under this approach, a defendant had to engage in conduct that constituted two injuries to the Commonwealth.  *Id*.

Through passage of the merger statute at § 9765, however, the legislature replaced the "single injury" approach and adopted clear guidance as to when merger could, and could not, be found.  This is clearly a determination allocated to the General Assembly under our constitutional scheme.  Our Supreme Court previously observed:

> *The double jeopardy provision does not restrain the legislature in its role in defining crimes and fixing penalties*.  Its intendment is to prevent courts from imposing more than one punishment under the legislative enactment and restraining prosecutors from attempting to secure that punishment in more than one trial.

*Commonwealth v. Frisbie*, 485 A.2d 1098, 1100 (Pa. 1984) (citations omitted) (emphasis in original).

Since the enactment of § 9765 and a pure statutory elements approach to sentencing merger, this Court has noted that "[m]erger law has evolved substantially since [the issuance of decisions that predate the merger statute. Now,] Section 9765 and the 'elements' approach to merger govern [merger claims]."  *Commonwealth v. Cianci*, 130 A.3d 780, 783 n.2 (Pa. Super. 2015).  Under the strict, elements-based test, "[t]he only way two crimes merge for sentencing is if all elements of [one] offense are included within the [elements of the other] offense."  *Commonwealth v. Coppedge*, 984 A.2d 562, 564 (Pa. Super. 2009).  In applying this test, we have said that

regardless of whether the facts of a particular case establish the commission of two crimes, if an individual can commit one offense without committing the other, "the elements *in general* are different, and the legislature has said merger cannot apply.  The analyses by cases arising before the effective date of 42 Pa.C.S.A. § 9765 are [no longer instructive in such instances]." ***Coppedge***, 984 A.2d at 565 (merger is forbidden unless "all of the statutory elements of one offense are included in the statutory elements of the other offense," even if there is only a single criminal act) (emphasis in original). Appellant's "single injury" theory is inconsistent with the current approach to merger compelled by § 9765.

For each of the foregoing reasons, Appellant is not entitled to relief. Appellant's first and second-degree murder convictions do not merge under 42 Pa.C.S.A. § 9765.  First-degree murder requires proof of a specific intent to kill in all cases while second-degree murder does not, and second-degree murder requires the commission of an enumerated underlying felony while first-degree murder does not.  Because all of the statutory elements of one of the offenses are not included in the statutory elements of the other offense, the trial court did not err in imposing separate sentences for Appellant's murder convictions.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  9/6/2018