J-S54008-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID CHARLES BEAN | : | |
| | : | |
| Appellant | : | No. 866 MDA 2020 |

Appeal from the PCRA Order Entered June 2, 2020
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s): CP-41-CR-0001226-2014

BEFORE: NICHOLS, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY NICHOLS, J.: **FILED JUNE 22, 2021**

Appellant David Charles Bean appeals from the order dismissing his timely first Post Conviction Relief Act[1] (PCRA) petition. Appellant contends that his trial counsel was ineffective because counsel failed to request a prompt complaint jury instruction and the PCRA court erred by dismissing his petition without an evidentiary hearing. We affirm.

A previous panel of this Court summarized the facts and procedural history of this case as follows:

> In the summer of 2013, on or about July 14, 15, August 8, and August 10, 2013, Appellant recorded videos on his cell phone which showed him engaging in graphic, explicit sexual acts with two female acquaintances, J.D. and L.K. (the [v]ictims), while they were passed out from the effect of drugs, mainly heroin. . . .
>
> Both victims admitted that on previous occasions, each had agreed to engage in sexual acts with Appellant (while they were

---

[1] 42 Pa.C.S. §§ 9541-9546.

conscious) in exchange for his providing them heroin, Xanax, or the money to buy the drugs. Appellant essentially claimed a kind of boyfriend/girlfriend relationship with the two women, who had both lived or stayed with him at various times. At trial, Appellant explained, "[it] kind of evolved into boyfriend/girlfriend, but like a degree below that." Appellant maintained that he had shot the videos to show both women the effect the drugs were having on them.

However, both of the women denied a romantic relationship with Appellant, or more than a casual friendship (other than for the admitted sex, drugs, and living arrangements). Both women also denied consenting to the sex acts on the videos. Although accounts varied, the two women eventually discovered the videos and reported Appellant to the Pennsylvania State Police. [However, L.K. deleted the videos that she found because she did not want anyone to see them. L.K. testified that she confronted Appellant about the videos, and during the ensuing argument, Appellant hit L.K. in the face, resulting in a black eye.] . . .

The state police prepared two affidavits of probable cause in support of a search warrant for the cell phone.

\*　　\*　　\*

A State Police expert recovered videos from [Appellant's] cell phone (or from SD cards, after the women deleted the original videos from the cell phone).

*Commonwealth v. Bean*, 1320 MDA 2017, 2018 WL 3628199, at \*1-2 (Pa. Super. filed July 31, 2018) (unpublished mem.) (record citations and footnote omitted).

We add that Appellant's trial counsel cross-examined J.D. about her previous relationship with Appellant, including that Appellant gave her a cell phone as a birthday present and that there were pictures of her and Appellant together on Facebook. N.T. Trial, 9/12/16, at 37-43. J.D. stated that she and Appellant were friends. *Id.* at 45. J.D. was also asked about a video that

- 2 -

Appellant posted on Facebook depicting J.D. asleep, and J.D. confirmed that she posted a response indicating that she thought it was funny. *Id.* at 45-47. Also during cross-examination, J.D. confirmed that she discovered the sexual videos on Appellant's cell phone in July of 2013, but did not go to the Pennsylvania State Police until October 15, 2013. *Id.* at 35-36.

On cross-examination, L.K. confirmed that she engaged in consensual sex with Appellant for money, which she used to buy drugs. *Id.* at 68-69. She lived with Appellant for about one month. *Id.* at 69. L.K. admitted there was a picture of Appellant and her together on her Facebook page, but stated that she also had photos with people that she was no longer friends with on her Facebook page. *Id.* at 93. L.K. testified that she deleted the videos when she found them, but she did not confront Appellant about the videos until about a week later. *Id.* at 75-76, 79-80. Appellant hit L.K. and she filed a complaint against him regarding this assault on or about September 7, 2013. *Id.* at 66-67, 80, 84. L.K. later gave a statement about Appellant's sexual videos to Corporal Jeffrey A. Vilello[2] of the Pennsylvania State Police on October 15, 2013. *Id.* at 82-83. L.K. recalled discussing Appellant hitting her with Corporal Vilello, but Corporal Vilello testified that he did not discuss that incident with L.K. during her interview. *Id.* at 83-84, 149.

The parties stipulated that J.D. had a prior conviction for retail theft, a *crimen falsi* offense. N.T. Trial, 9/13/16, at 16. The trial court instructed the

_____

[2] Corporal Vilello is also referred to as "Trooper Vilello" throughout the record. We refer to him with the rank of Corporal throughout.

jury about how a *crimen falsi* conviction can be used to evaluate a witness's credibility. *Id.* at 16-17.

Appellant testified that initially J.D. lived with him because she needed a place to stay, but it grew from there and that he and J.D. were "kind of boyfriend/girlfriend" and "like a couple." *Id.* at 25, 37. J.D. lived with Appellant from Christmas 2012 to late March or mid-April 2013. *Id.* at 26. Appellant credited J.D. with saving his life by taking him to the hospital when he had a heart attack in July of 2013. *Id.* at 27. Appellant admitted that he helped J.D. buy heroin, but stated he did so because he could not bear to see her suffering from withdrawal. *Id.* at 43-44.

Appellant testified that he met L.K. in the spring of 2013. *Id.* at 28. L.K. asked Appellant for a "date", meaning have sex with her in exchange for money. *Id.* at 29. Appellant claimed that he and L.K. had sex "hundreds" of times, and not always for money. *Id.* at 29-30. Appellant claimed that on prior occasions, L.K. consented to sex with Appellant prior to "nod[ding] off" due to heroin use and she told him he could continue to have sex with her if that happened. *Id.* at 32-33. Appellant admitted hitting L.K., but he stated that their argument was not about the videos on his phone. *Id.* at 38-40, 48. Instead, Appellant claimed that they argued because he was angry about almost being arrested when the police pulled their car over and found L.K.'s heroin. *Id.* at 39-40.

Appellant explained that he made the videos of J.D. and L.K. under the influence of heroin to scare them into quitting heroin by showing its effects on

- 4 -

them.  *Id.* at 31-34.  Appellant asserted that they consented to him recording them while under the influence of drugs, and all of the sexual acts in those videos were consensual.  *Id.* at 44-46, 51.  Appellant also claimed that L.K. was awake during the videos where he is having sex with her, but she did not appear to be awake because of the effects of heroin.  *Id.* at 46-48.

In her closing argument, Appellant's trial counsel argued that the victims were not credible when they testified that the sexual activity and videos were not consensual.  N.T. Closing Arg., 9/13/16, at 2-24.  Trial counsel also contended that the victims' behavior towards and history with Appellant indicated they had consensual relations with him.  *Id.*

The trial court instructed the jury on evaluating the credibility of witnesses as follows:

> You folks are the judges of the facts.  And as judges of the facts, you have to judge the credibility of the witnesses.  This means you must judge the truthfulness and accuracy of each witness' testimony and decide whether to believe all, part, or none of that testimony.
>
> Some of the things you may consider are was the witness able to see, hear, know the things about which he or she testified.  How well could the witness remember and describe those things.  Was the ability of the witness to see, hear, know, remember, or describe those things affected by youth or age, or any physical, mental, or intellectual deficiency.  Did the witness testify in a convincing manner?  Did the witness have any interest in the outcome of the case, bias, prejudice, or other motive that might affect his or her testimony?  How well does the testimony of the witness square with the other evidence in the case, including the testimony of other witnesses[?]
>
> As sole judges of the credibility and fact, you, the jurors, are responsible to give the testimony of every witness and all the

other evidence whatever credibility and weight you think it deserves.

You have heard evidence that two of the witnesses, I think it was Mr. Kessler[3] and [J.D.] had been convicted of a crime. In [J.D.'s] case I think it was one count of retail theft. And Mr. Kessler's I believe it was forgery and theft by unlawful taking.

As I explained to you before, the only purpose for which you may consider this evidence of prior conviction is in deciding whether to believe all or part of those witness' testimony. In doing so, you may consider the type of crime committed, how long ago it was committed, and how it might affect the likelihood that the witnesses has testified truthfully in this case.

Now [Appellant] took the stand as a witness. And in considering his testimony, you're to follow the same general instructions I gave you for judging credibility of any witness. You should not believe [Appellant]'s testimony merely because he is the [d]efendant. In weighing his testimony, however, you may consider the fact that he was a vital interest in the outcome of this trial. You may take the [Appellant]'s interest into account just as you would the interest of any other witness, along with all other facts and circumstances bearing on credibility in making up your mind what weight his testimony deserved.

N.T. Trial, 9/13/16, at 76-78.

As this Court previously noted:

The jury convicted Appellant on September 13, 2016.[fn3] The jury acquitted Appellant of two other counts of invasion of privacy.

> [fn3] In addition to rape of an unconscious person, the jury convicted him of involuntary deviate sexual intercourse with an unconscious person, two counts of sexual assault, aggravated indecent assault without consent, aggravated

---

[3] Derrick Kessler was a defense witness who testified that he knew both Appellant and L.K., and he had used heroin with L.K. N.T. Trial, 9/13/16, at 18-19. Kessler stated that he had seen a video of L.K. "nodding in and out after using heroin, and giving [Appellant] oral sex[]" but L.K. was not unconscious and she was not being forced. *Id.* at 20, 22-24. Kessler was not shown any of the videos previously admitted as exhibits during his testimony.

indecent assault of an unconscious person, four counts of obscene and other sexual materials and performances, two counts of invasion of privacy, three counts of indecent assault without consent, and three counts of indecent assault of an unconscious person.

On March 20, 2017, the trial court sentenced Appellant, a repeat felon with a long criminal history, to a term of incarceration of not less than nineteen nor more than thirty-eight years of incarceration. . . . On August 15, 2017, the court amended the sentence to an aggregate term of not less than eighteen nor more than thirty-six years of incarceration.[fn4]

> [fn4] The [trial] court vacated Appellant's convictions of obscene performance on the ground that that the sex videos had not been presented to the public.

**Bean**, 2018 WL 3628199, at *2.

Appellant timely appealed, and this Court affirmed his judgment of sentence, but vacated his designation as a sexually violent predator on July 31, 2018. **Id.** at *6. Our Supreme Court denied Appellant's petition for allowance of appeal on January 31, 2019. **Commonwealth v. Bean**, 201 A.3d 159 (Pa. 2019).

On June 25, 2019, Appellant timely filed the instant PCRA petition *pro se*. The PCRA court appointed counsel, who filed an amended PCRA petition. Appellant argued that his trial counsel provided ineffective assistance for not requesting a prompt complaint jury instruction and for not seeking severance of the charges related to J.D. from the charges related to L.K.

On April 9, 2020, the PCRA court issued an opinion and order pursuant to Pa.R.Crim.P. 907 stating that Appellant's issues were without merit and notified him of the PCRA court's intent to dismiss the petition. PCRA Ct. Op.

& Order, 4/9/20, at 3-8. Appellant filed a response on April 17, 2020, arguing that the PCRA court erred in concluding that Appellant did not suffer prejudice from trial counsel's failure to request the prompt complaint jury instruction. The PCRA court rejected Appellant's arguments concerning prejudice and dismissed Appellant's petition on June 2, 2020. Order, 6/2/20, at 1-3.

Appellant filed a timely notice of appeal on June 15, 2020. Appellant complied with Pa.R.A.P. 1925(b). The PCRA Court issued a Rule 1925(a) opinion adopting the analysis set forth in its April 9, 2020 Rule 907 opinion and order and its June 2, 2020 order dismissing the instant PCRA petition. *See* PCRA Ct. Op., 8/4/20.

Appellant raises two issues for our review:

1. Did the [PCRA] court commit an abuse of discretion and/or error of law in dismissing the amended PCRA petition without the benefit of a hearing?

2. Did [Appellant's] amended PCRA petition raise a meritorious issue?

Appellant's Brief at 6.

We summarize Appellant's together because they are related, and Appellant discusses them collectively in his appellate brief.[4] Appellant argues

---

[4] Although Appellant presents two distinct questions on appeal, the argument section of Appellant's brief is not divided into two separate sections for each question. *See* Pa.R.A.P. 2119(a) (stating "[t]he argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part . . . the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent"). Nevertheless, because Appellant's failure to comply with the Rules of Appellate
*(Footnote Continued Next Page)*

that the PCRA court erred in dismissing his PCRA petition without a hearing. *Id.* at 17-29. Specifically, Appellant claims that the PCRA court incorrectly concluded that Appellant did not suffer prejudice from trial counsel's failure to request a prompt complaint jury instruction. *Id.* at 21-29. Appellant contends a victim's lack of prompt complaint is a factor for the jury to consider in assessing that victim's credibility, and the PCRA court erred in concluding that the general credibility jury instruction was sufficient for the jury to assess the victims' credibility. *Id.* at 21-22, 24-26. Appellant further claims that the PCRA court erred in relying on *Commonwealth v. Sandusky*, 77 A.3d 663 (Pa. Super. 2013), in concluding that Appellant was not prejudiced by the omission of this instruction, because *Sandusky* is not applicable to the facts of this case. *Id.* at 23-26. Appellant additionally contends that the PCRA court's conclusion that he was not prejudiced because trial counsel had the opportunity to cross-examine the victims is erroneous in light of *Commonwealth v. Mikell*, 729 A.2d 566 (Pa. 1999). *Id.* at 22-23, 25-26.

Lastly, Appellant reiterates the PCRA court's conclusion that the absence of the prompt complaint jury instruction was not prejudicial because (1) there were video recordings of Appellant engaging in sexual acts with the unconscious victims and (2) unconscious persons cannot consent. *Id.* at 26.

---

Procedure does not impede our review, we decline to find waiver. *See, e.g.*, *Commonwealth v. Melvin*, 548 A.2d 275, 277 (Pa. Super. 1988) (declining to find the defendant's issues waived when he presented a single argument for four of his appellate issues, and also condensed three other issues into one argument).

Appellant argues that the PCRA court's reasoning does not recognize the consent defense Appellant presented at trial. *Id.* Specifically, Appellant notes his testimony at trial that L.K. consented to sex with Appellant, which included sex if she lost consciousness after using heroin. *Id.* at 27-29. Further, Appellant points to the delay of several months between J.D. discovering the videos and reporting them to the police and the one-week delay between L.K. discovering the videos and confronting Appellant. *Id.* at 27-28. Appellant contends that the general credibility instruction was not adequate to address the issue of whether the victims consented to the sexual acts shown in the videos. *Id.* at 29. Appellant argues that his counsel should have requested the prompt complaint instruction to assist the jury in understanding the law regarding the failure to make a prompt complaint. *Id.* Appellant concludes that he suffered prejudice as a result of his trial counsel's error. *Id.* at 28-29.

The Commonwealth responds that Appellant was not prejudiced by the absence of the prompt complaint jury instruction because the trial court gave a thorough general credibility instruction, Appellant's trial counsel cross-examined the victims, and trial counsel argued the victims were not credible. Commonwealth's Brief at 10-12 (citing *Sandusky*, 77 A.3d at 668). The Commonwealth argues the *Mikell* is not applicable to the facts of this case because *Mikell* involved the trial court's failure to instruct the jury about alibi evidence, and an alibi is an affirmative defense while the lack of the prompt complaint is not. *Id.* at 12-14.

Lastly, the Commonwealth contends that Appellant's claim also lacks arguable merit. *Id.* at 16-18. The Commonwealth notes that under the law, unconscious persons are incapable of consent. *Id.* at 17 (citations omitted). The Commonwealth argues that Appellant has not cited any authority supporting his prior consent defense, which would be an exception to this general principle. *Id.* at 17-18.

Our standard and scope of review are as follows:

When reviewing the propriety of an order pertaining to PCRA relief, we consider the record in the light most favorable to the prevailing party at the PCRA level. This Court is limited to determining whether the evidence of record supports the conclusions of the PCRA court and whether the ruling is free of legal error. We grant great deference to the PCRA court's findings that are supported in the record and will not disturb them unless they have no support in the certified record. However, we afford no such deference to the post-conviction court's legal conclusions. We thus apply a *de novo* standard of review to the PCRA court's legal conclusions.

*Commonwealth v. Diaz*, 183 A.3d 417, 421 (Pa. Super. 2018) (citations omitted and formatting altered).

With respect to claims of ineffective assistance of counsel, counsel is presumed to be effective, and the petitioner bears the burden of proving to the contrary. *Commonwealth v. Brown*, 196 A.3d 130, 150 (Pa. 2018) (citation omitted). Moreover,

a PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

- 11 -

*Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa. 2014) (citations omitted and formatting altered).

To obtain relief based on a claim of ineffective assistance of counsel, a PCRA petitioner must establish: (1) the underlying claim is of arguable merit; (2) there was no reasonable basis for counsel's action or failure to act; and (3) a prejudice to the petitioner; *i.e.*, but for counsel's error, there is a "reasonable probability the result of the proceeding would have been different." *Commonwealth v. Treiber*, 121 A.3d 435, 444 (Pa. 2015). "If a petitioner fails to prove any of these prongs, his claim fails." *Spotz*, 84 A.3d at 311 (citation omitted). Therefore, when a petitioner has failed to meet the prejudice prong, the claim may be disposed of on that basis alone, without a determination of whether the first two prongs have been met. *Commonwealth v. Baker*, 880 A.2d 654, 656 (Pa. Super. 2005).

With respect to a PCRA hearing, this Court has stated that

it is well settled that there is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary. To obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing.

*Commonwealth v. Maddrey*, 205 A.3d 323, 328 (Pa. Super. 2019) (citations omitted and formatting altered), *appeal denied*, 218 A.3d 380 (Pa. 2019).

This Court has explained:

the premise for the prompt complaint instruction is that a victim of a sexual assault would reveal at the first available opportunity that an assault occurred. The instruction permits a jury to call into question a complainant's credibility when he or she did not complain at the first available opportunity. However, there is no policy in our jurisprudence that the instruction be given in every case.

The propriety of a prompt complaint instruction is determined on a case-by-case basis pursuant to a subjective standard based upon the age and condition of the victim. For instance, where an assault is of such a nature that the minor victim may not have appreciated the offensive nature of the conduct, the lack of a prompt complaint would not necessarily justify an inference of fabrication.

*Sandusky*, 77 A.3d at 667 (citations omitted and formatting altered).

The suggested standard criminal jury instruction on the prompt complaint instruction states:

4.13A FAILURE TO MAKE PROMPT COMPLAINT IN CERTAIN SEXUAL OFFENSES

1. Before you may find the defendant guilty of the crime charged in this case, you must be convinced beyond a reasonable doubt that the act charged did in fact occur and that it occurred without [name of victim]'s consent.

2. The evidence of [name of victim]'s [failure to complain] [delay in making a complaint] does not necessarily make [his] [her] testimony unreliable, but may remove from it the assurance of reliability accompanying the prompt complaint or outcry that the victim of a crime such as this would ordinarily be expected to make. Therefore, the [failure to complain] [delay in making a complaint] should be considered in evaluating [his] [her] testimony and in deciding whether the act occurred [at all] [with or without [his] [her] consent].

3. You must not consider [name of victim]'s [failure to make] [delay in making] a complaint as conclusive evidence that the act did not occur or that it did occur but with [his] [her] consent. [Name of victim]'s failure to complain [at all] [promptly] [and the nature of any explanation for that failure] are factors bearing on

- 13 -

> the believability of [his] [her] testimony and must be considered by you in light of all the evidence in the case.

Pa. SSJI (Crim) 4.13A.

In **Sandusky**, the defendant was charged with the sexual abuse of eight young boys, who were adults at the time of the trial. **Sandusky**, 77 A.3d at 666. On direct appeal, the defendant argued the trial court erred in refusing to give the jury the requested prompt complaint instruction. **Id.** at 666-69 & 666 n.1.

The **Sandusky** Court held that the trial court erred when it failed to evaluate the appropriateness of the charge with respect to each individual victim, but this Court ultimately determined that the trial court's error was harmless.[5] **Id.** at 668. The trial court instructed the jury with the standard credibility charge, which included instructions to consider whether the testifying witnesses had "any interest in the outcome of the case, anything to gain or lose . . . [a]ny bias, any prejudice, or any other motive that might affect his or her testimony." **Id.** at 669 (emphasis omitted). This Court explained:

---

[5] We note that because **Sandusky** was a direct appeal case, this Court applied the harmless error standard. **Sandusky**, 77 A.3d at 668. Harmless error differs from the reasonable probability standard applicable to PCRA review. **See Spotz**, 84 A.3d at 315 (discussing different standards of prejudice applied on appellate review); **see also Treiber**, 121 A.3d at 444 (explaining that in the PCRA context, prejudice is defined as a "reasonable probability the result of the proceeding would have been different"). Furthermore, the Commonwealth bears the burden to show an error is harmless, while under the PCRA, the defendant bears the burden of establishing prejudice. **See Spotz**, 84 A.3d at 315.

> This instruction provided the jury with a sufficient framework to question the victims' credibility. In addition, at trial, Sandusky extensively argued that the victims not only delayed in reporting, but that they did so because the abuse never occurred and that they concocted their stories for financial gain. As stated above, the trial court specifically instructed the jury that they were to consider any possible motives of the victims in coming forward. The vigorous cross-examination of the victims and arguments by defense counsel, when combined with the trial court's instructions on credibility, clearly defined the issues for the jury. Therefore, we find that, under the facts of this case, the absence of the prompt complaint instruction did not prejudice Sandusky.

*Id.*

In **Mikell**, our Supreme Court held that the defendant's trial counsel rendered ineffective assistance for failing to request an alibi jury instruction after presenting two alibi witnesses at trial. **Mikell**, 729 A.2d at 570-71. The Court reasoned that because "one of the purposes of an alibi instruction is to ensure that a jury does not interpret the failure to prove the defense as evidence of a defendant's guilt" and that the trial court did not instruct the jury on how to assess the defendant's alibi evidence, the defendant was prejudiced by trial counsel's error. *Id.* at 571.

Here, the PCRA court explained in its Rule 907 opinion and order that:

> The lack of a prompt complaint by a victim of a crime, although not dispositive of the merits of the case, may justifiably produce a doubt as to whether the offense indeed occurred or whether it was a recent fabrication by the complaining witness. Whatever the scenario, the victim's motive in making a complaint following a considerable period of silence is relevant in affecting the witness' veracity

> [Appellant] cannot show prejudice. His counsel was still able to cross-examine the witnesses on their failure to promptly report the assaults, counsel argued to the jury that they were not credible, and the trial court gave a general instruction on how to

- 15 -

evaluate the witness' credibility. The conduct of the trial and the court's instructions as a whole, prevent [Appellant] from carrying his burden on prejudice. *See Commonwealth v. Sandusky*, 77 A.3d 663, 669 (Pa. Super. 2013) (no prejudice where the court's general credibility instruction and vigorous cross-examination of victims and arguments by defense counsel clearly defined the issues for the jury).

Furthermore, this was not a typical "he said/she said" rape case. [Appellant] videotaped himself performing sexual acts on the victims. These videos were played for the jury. The victims were unconscious during the sexual acts. Unconscious persons are incapable of consent. *See Commonwealth v. Erney*, 698 A.2d 56, 59 (Pa. 1997). . . .

PCRA Ct. Op. & Order at 4-5 (some citations omitted and formatting altered).

The PCRA court further explained:

Despite [Appellant's] arguments to the contrary, the court still finds that [Appellant] was not prejudiced by trial counsel's failure to request a prompt complaint instruction. The court stands by its statement that this was not a typical he said/she said sexual assault case. Here, unlike the typical case, the evidence consisted of more than just the testimony of the parties; there was video evidence of sexual encounters from which the jury could determine the nature of the sexual encounters and whether they were consensual, and [Appellant] made statements to law enforcement about his charges.[fn1]

> [fn1] In his statements to law enforcement [Appellant] asserted that the acts were consensual, but he indicated that he took the videos because he thought it was funny. He did not indicate that he took the video because he was trying to show the victims what they were like when they used drugs to discourage their drug usage.

In his testimony, [Appellant] claimed that L.K. had consented to the sexual encounters and she had indicated if she "nodded off" due to her drug usage that [Appellant] could continue to have sex with her. There was a nonsexual video where L.K. was "nodding off" while standing near and then sitting at a table and she nearly fell off the chair on which she was seated. In the sexual videos, however, the victims were not "nodding off"; instead they were completely unconscious or "out cold." The victims were not

- 16 -

making any movements. Everything about the victims—their body position, their lack of movement, their disheveled hair, their limp arms and legs, and their eyes being closed or slightly opened as if their eyes were rolling back in their head[s]—indicated that they were not aware of what [Appellant] was doing to them. Moreover, [Appellant] was very secretive and quiet so as not to disturb the victims. The videos were focused on the sexual acts that [Appellant] is perpetrating or attempting to perpetrate against the victim[s], as if [Appellant] intended to watch them at a later time for his own sexual gratification and not to show the victims how they were "nodding off" due to their drug usage.

Furthermore, the videos do not depict [Appellant] lovingly saying something like "look what heroin does to you." Instead one of the videos depicts the unconscious victim with [Appellant's] semen all over her face and [Appellant] menacingly whispering "that's what happens to you." At approximately 2:20 of a two minute and a 34 second video referenced in cross examination of [Corporal] Vilello as video number 21 (N.T., 9/12/2016, at 144) in which the victim is wearing a purple shirt and appears to be snoring and [Appellant] is pushing or rubbing his penis against the victim's mouth, [Appellant] says very softly "I want it; I'm going to take it."

In the PCRA context, prejudice is defined as a reasonable probability that the outcome of the proceedings would have been different. A reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding. [**Commonwealth v.**] **Postie**, [200 A.3d 1015, 1023 (Pa. Super. 2018) (*en banc*)] (citing **Commonwealth v. Ali**, 608 Pa. 71, 86-87, 10 A.3d 282, 291 (2010)). Under the unique facts and circumstances of this case, when all of the evidence is considered as a whole, the lack of a prompt complaint instruction does not undermine the court's confidence in the outcome of the [Appellant's] trial.

Order, 6/2/20, at 1-3.

We note that Appellant asserts **Sandusky** is distinguishable because that case involved minor complainants and the defendant did not raise the issue of consent. However, the discussion of the harmless error in the direct

appeal in **Sandusky** is persuasive in our consideration of the "more exacting" test for prejudice in the context of an ineffective assistance counsel claim in this PCRA appeal. **See Spotz**, 84 A.3d at 315 (citation omitted).

Further, we conclude that **Mikell** is not applicable to the facts of this case. Unlike the alibi instruction in **Mikell**, we agree with the PCRA court that the absence of the prompt complaint instruction would not have resulted in the jury interpreting Appellant's failure to prove consent as evidence of guilt. **Cf. Mikell**, 729 A.2d at 570-71. Further, we agree with the PCRA court that the trial court provided adequate instructions about evaluating the credibility of witnesses. **Cf. id.**

Following our review, we agree with the PCRA court that Appellant has not established that he was prejudiced by trial counsel's failure to request the suggested jury instruction regarding prompt complaint. As explained above, Appellant's trial counsel cross-examined the victims about matters related to their credibility. There was a stipulation that J.D. had been convicted of a *crimen falsi* offense. Trial counsel argued in her closing that the victims were not credible with respect to their claims that the recorded sexual acts with Appellant were not consensual. The trial court's instructions on credibility sufficiently defined those issues for the jury. **Cf. Sandusky**, 77 A.3d at 669.

For these reasons, Appellant has not shown that but for trial counsel's failure to request the prompt complaint instruction that there was a reasonable probability that the outcome of his trial would have been different. **See Treiber**, 121 A.3d at 444; **Spotz**, 84 A.3d at 315. Having failed to

establish the prejudice prong, Appellant's ineffective assistance of counsel claim fails. **See Spotz**, 84 A.3d at 311; **Baker**, 880 A.2d at 656.[6] Therefore, we affirm the PCRA court's order dismissing Appellant's PCRA petition. **See Diaz**, 183 A.3d at 421.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/22/2021

---

[6] Additionally, we conclude that because there is no genuine issue of material fact to be considered, the PCRA court did not abuse its discretion by not convening an evidentiary hearing. **See Maddrey**, 205 A.3d at 328.