J-S46045-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DAMARJON DYSHONE BEASON | : | |
| | : | |
| Appellant | : | No. 298 WDA 2023 |

Appeal from the Judgment of Sentence Entered September 15, 2022
In the Court of Common Pleas of Erie County
Criminal Division at No(s): CP-25-CR-0001078-2020

BEFORE: DUBOW, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                    **FILED: July 18, 2024**

Demarjon Dyshone Beason ("Beason") appeals from the judgment of sentence following his conviction of second-degree murder, robbery, conspiracy to commit burglary, and conspiracy to commit robbery.[1] We affirm.

The testimony from Beason's joint trial[2] established that at 5:45 p.m. on December 7, 2019, Daniel Dugan ("Dugan") drove to Patric Phillips's ("the victim's") home in Erie to watch a football game. *See* N.T., 6/2/22, 86. Dugan and the victim were like brothers; the victim sold marijuana and he and Dugan frequently smoked marijuana together. *See id*. at 86-87. As Dugan walked onto the victim's driveway, he saw a man in a fluffy blue coat there. *See id*.

---

[1] *See* 18 Pa.C.S.A. §§ 2502(b), 3701, 903.

[2] The jury tried Beason jointly with Derrick Elverton ("Elverton"), Marshawn Williams ("Williams"), and Anthony Blanks ("Blanks").

at 95-96, 99. Seconds later, another person jabbed something which felt like a gun into Dugan's side. *See id*. at 96-97. That person ordered Dugan to knock on the door. *See id*. at 97. Dugan also saw a third person who appeared to be with the other two men. *See id*. at 99.

Dugan did not want to knock on the door and did so lightly; one of the men then said he would shoot him if he did not knock more forcefully, so he did. *See id*. at 100-01. When the victim came to the door, two of the three men stood beside Dugan. Before Dugan could give a warning, one of the men shot the victim with a 9 mm Ruger firearm. All three men then fled. *See id*. at 103-11; N.T., 6/7/22, at 117-18.

Shot twice in the head, the victim died shortly after police arrived. *See id*. at 148, 158-59, 184. Police found marijuana and two firearms in the home the victim shared with others. *See id*. at 160-61; 6/3/22, at 100-01. In the yard of the house next door, police found a 9 mm Ruger pistol with an altered serial number. *See* N.T., 6/2/22, at 173-74, 179; 6/3/22, at 89-90, 127-28. Forensic testing established the Ruger fired the bullet that killed the victim. *See* N.T., 6/3/22, at 120-24.

On the day after the killing, Lieutenant Michael Hertel ("Lieutenant Hertel") recovered a blue coat under the wheelchair ramp of the house next door. *See* N.T., 6/2/22, at 243-44; 6/3/22, at 81. DNA and video evidence established the coat belonged to Elverton; its sleeves were turned inside out as if removed hastily. *See* N.T., 6/2/22, at 228, 244-45; N.T. 6/6/22, 122-31, 134-35; N.T., 6/7/22, 208-09. The police also found Elverton's cell phone

on a nearby path between garage sheds. *See* N.T., 6/3/22, at 185; N.T., 6/7/22, at 106.

Detective Matthew Berarduci recovered video evidence from multiple locations on the block and the surrounding neighborhood, and he and Lieutenant Hertel each reviewed the videos. *See* N.T., 6/2/22, at 215-19; N.T., 6/3/22, at 64-67, 247-52. One video showed three men walking toward the victim's house minutes before the killing. *See* N.T., 6/2/22, at 221; N.T., 6/6/22, at 72-73, 137-29, 252-56; N.T., 6/7/22, at 131-32, 174. In that video, one of the men wears Air Jordan Retro 4 sneakers and a black coat with a red emblem; this coat was similar to one Beason wore in the months and days before and after the killing. *See* N.T., 6/7/22, at 142-45. Beason is accompanied in the video by a man wearing a light blue coat like the one Elverton wore. On Beason's social media account, police found photographs of him in the black coat, and some of him opening a box of Air Jordan 4 Retro sneakers. *See* N.T., 6/7/22, at 142-45.[3] Other video evidence showed Beason and Elverton returning to the victim's yard two days after the killing looking for something. *See* N.T., 6/2/22, at 235. N.T. 6/8/22, at 229-230.

Danisha Polk ("Polk"), who regarded the victim as her best friend, testified she viewed video and still photographs from the scene one month after the killing and identified Beason as "Mar Mar," a boy her parents coached

---

[3] In an April 2020 search of Beason's home, police recovered a box for a pair of Air Jordan Retro 4 sneakers. *See* N.T., 6/7/22, at 96-98.

in a basketball league who was also the child of her relative. *See* N.T. 6/3/22, at 19-28, 31, 49-50.[4]

William Rickert ("Rickert") testified that a month after the killing the police showed him a video of three men walking near the crime scene immediately after the murder, and he identified "Mar Mar" Beason from the video. *See* N.T., 6/6/22, at 31-36, 39.

Melissa Seaman ("Seaman") testified that she was dating Michael Toles ("Toles") at the time of the crime, and that co-defendant Williams described the victim in her presence in the weeks prior to the killing as a "good lick," meaning someone to rob. *See* N.T., 6/3/22, at 164-75. Some days later, Seaman and some other men went to the victim's house to go "hit a lick," but did not do so. *Id*. at 176-78. Seaman testified that on the day of the killing, Toles and Marshawn left to "hit a lick;" when they returned, Williams said they went to go hit a lick on the victim and it went badly and someone had been shot. *Id*. at 178-81. Willams asked her to dispose of some pants. *See id*. at 181-82.

Toles testified he was dating Seaman at the time of the crime. *See* N.T., 6/6/22, 151. He stated he regularly saw Williams in Fall 2019. *See id*. at 152. Six weeks before the murder, he, Elverton, and Williams discussed hitting a lick on the victim, believing him a successful marijuana dealer. *See*

_____

[4] Polk testified that Marshawn Williams was also sometimes referred to as "Mar Mar." *See* N.T., 6/3/22, at 45.

*id*. at 156-63.  In mid-November, Toles, and three other people including Seaman, drove to an area near the victims' house with the intention to rob him but aborted the plan.  *See id*. at 165-77.  Toles testified that on the day of the killing, Williams contacted him for a ride; when he arrived at 6th and Ash Streets, he found Williams, Elverton, and a man identified as "Little Mar Mar" with him.  *See id*. at 177-83, 264; N.T., 6/7/22, 42, 50, 53.[5]  At Williams's instruction, Toles drove the men to an area between 22nd and 23rd Streets and Wayne Avenue, near where the victim lived.  *See id*. at 183-85. The three men got out of the car and walked together up Wayne Avenue toward 24th Street, then returned to the car.  *See id*. at 185-90. "Little Mar Mar" was waiting for co-defendant Blanks, and when he saw him, he summoned him to the car.  *See id*. at 192-95, 268, 272.  Little Mar Mar asked Blanks to give him his gun because he needed it for something.  *See id*. at 195-98; N.T., 6/7/22, 82.  Blanks initially hesitated, but Little Mar Mar persisted until Blanks gave him his gun, a Ruger 9 mm pistol.  *See id*. at 196-99; N.T., 6/7/22, 76, 117-18, 122, 220.

Toles testified the three men then left the car and approached the victim's house.  *See id*. at 200-01.  Toles heard gunshots and drove away. *See id*.  Williams later told Toles the victim had been shot.  *See id*. at 204.

The evidence also established the day before the killing, Williams called Beason, Elverton, and Toles, and he called Beason and Elverton the day of the

---

[5] Toles could not identify Beason as "Little Mar Mar."  *See* N.T., 6/7/22, at 221.

killing. *See* N.T., 6/7/22, at 227-28, 233. Within fifteen minutes of the killing and flight from the scene, Williams made multiple calls to Beason and called Elverton, who had left his phone at the scene. *See id*. at 235-36. Beason and Elverton called each other six times in the early afternoon of the day of the murder, and Beason called Williams later that afternoon and had four calls with Blanks. *See id*. at 236-38. Less than ten minutes after the killing, Blanks called Beason. *See id*. at 250. During that short period, Beason called Williams and made twelve other calls. *See id*. at 244, 246-48. Within the hour, Beason had two additional calls with Blanks. *See id*. at 249.

The jury convicted Beason of the above-listed charges. In September 2022, the court imposed a cumulative sentence of forty-one-and-one-half years to life imprisonment. Beason timely appealed, and he and the trial court complied[6] with Pa.R.A.P. 1925.

On appeal, Beason raises the following issue:

Whether the Commonwealth failed to present sufficient evidence to convict [Beason] beyond a reasonable doubt of murder of the second degree, robbery, conspiracy to commit robbery, and conspiracy, and conspiracy to commit burglary?

Beason's Brief at 3 (unnecessary capitalization omitted).

---

[6] The jury convicted co-defendant Elverton of conspiracy to commit robbery, and conspiracy to commit burglary, co-defendant Williams of attempted burglary, conspiracy to commit robbery, robbery, and murder of the second degree, and co-defendant Blanks of receiving stolen property, firearms not to be carried without a license, and possession of a firearm with manufacturer's number altered.

This Court reviews the sufficiency of the evidence under the following standard:

A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. . . . ***When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.***

***Commonwealth v. Stahl***, 175 A.3d 301, 303-04 (Pa. Super. 2017) (added emphasis removed). In reviewing a sufficiency claim, this Court has also acknowledged that:

we may not weigh the evidence and substitute our judgment for the fact-finder. . . . The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated[,] and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Estepp***, 17 A.3d 939, 943-44 (Pa. Super. 201a) (citation omitted).

A person is guilty of second-degree murder when a homicide is committed while he is engaged as a principal or an accomplice in the perpetration of a felony. ***See*** 18 Pa.C.S.A. § 2502(b). "Perpetration of a felony" is defined as "[t]he act of the defendant in engaging in or being an accomplice in the commission of, or an attempt to commit, or flight after

committing, or attempting to commit robbery . . . ." **See** 18 Pa.C.S.A. § 20502(d).

A person commits robbery if, in the course of committing a theft, he inflicts serious bodily injury upon another. **See** 18 Pa.C.S.A. § 3701(a)(1)(i). An act is deemed in the course of committing a theft if it occurs in an attempt to commit theft or in flight after the attempt or commission. **See** 18 Pa.C.S.A. §3701(a)(2). A person commits burglary where, *inter alia*, he enters a building adapted for overnight accommodations with the intent to commit a crime therein where any person is present. **See** 18 Pa.C.S.A. § 3502(a)(3).

A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

> (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

> (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903(a). A conviction for criminal conspiracy thus requires the Commonwealth to prove that a defendant: (1) entered into an agreement to commit or aid in an unlawful act with another person or persons; (2) with a shared criminal intent; and (3) the defendant or a conspirator did an overt act in furtherance of the conspiracy. **See Commonwealth v. Munson**, 261 A.3d 530, 542 (Pa. Super. 2021). Because it is difficult to prove an explicit or

formal agreement to commit an unlawful act, a conspiratorial agreement is often proved inferentially by circumstantial evidence. *See Commonwealth v. Thoeun Tha*, 64 A.3d 704, 710 (Pa. Super. 2013). The conduct of the parties and the circumstances surrounding such conduct

> may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt. The conspiratorial agreement can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode.

*Commonwealth v. Nasir*, 308 A.3d 812, 818 (Pa. Super. 2023) (citation omitted).

A person is an accomplice of another person in the commission of an offense if:

> (1) with the intent or promoting or facilitating the commission of the offense, he:
>
>> (i) solicits such other person to commit it; or
>>
>> (ii) aides or agrees to aid such other person in planning or committing it; or
>
> (2) his conduct is expressly declared by law to establish his complicity.

18 Pa.C.S.A. § 306(c)-(d).

Beason subdivides his claim and first challenges the sufficiency of the evidence of second-degree murder. He asserts the Commonwealth failed to establish his presence or involvement in the murder, in part because some

Commonwealth witnesses were unreliable and because there was no forensic evidence of his guilt. *See* Beason's Brief at 16-21.

The trial court noted Beason's 1925(b) Statement challenged his conviction of second-degree murder because that crime required proof he killed the victim or caused the victim's death during his commission of the underlying felony. *See* Trial Court Opinion, 5/16/23, at 2, citing Beason's 1925(b) Statement at 1-2 (unnumbered). The court rejected this claim as contrary to Pennsylvania law, which permits a person to be convicted of second-degree murder as an accomplice. *See* Trial Court Opinion, 5/16/23, at 2-3, citing 18 Pa.C.S.A. § 2502(d); *Commonwealth v. Rivera*, 238 A.3d 482, 500 (Pa. Super. 2020). Beason claimed below the Commonwealth failed to prove his malicious intent, but, as the trial court stated, the *mens rea* of second-degree murder is inferred from the commission of the underlying felony. *See* Trial Court Opinion, 5/16/23, at 3, citing *Commonwealth v. Crissman*, 195 A.3d 588, 591 (Pa. Super. 2018).

The trial court correctly rejected the claims Beason asserted in his Rule 1925(b) Statement. A person can be convicted of murder of the second degree as an accomplice or a conspirator even if he does not murder the victim himself. *See* 18 Pa.C.S.A. § 2502(b), (d). Further, a conspirator is liable for acts committed in furtherance of the conspiracy, including murder. *See Commonwealth v. Lambert*, 795 A.2d 1010, 1024 (Pa. 2002). The court also correctly stated that *mens rea* can be inferred from the commission of

the underlying felonies.  **See Crissman**, 195 A.3d at 591 (Pa. Super. 2018).

Accordingly, the court properly rejected Beason's challenges to his second-

degree murder conviction.[7]

Beason next disputes the evidence of robbery because witnesses did

not identify him and no robbery occurred.  **See** Beason's Brief at 21-27.

The trial court stated Beason's 1925(b) sufficiency challenge to robbery

asserted the Commonwealth failed to prove he caused the victim's injury or

that a theft occurred.  **See** Trial Court Opinion, 5/16/23, at 4, citing Beason's

1925(b) Statement at 2.  The court noted the jury could properly have

convicted him of robbery as an accomplice and, in addition to the direct and

circumstantial evidence placing him at the scene of the murder, Toles's

testimony showed that Beason called for, and took possession of, the gun

_____

[7] Beason raises additional sufficiency challenges for the first time on appeal.
These challenges are not reviewable.  **See Commonwealth v. McFalls**, 251
A.3d 1286, 1293 (Pa. Super. 2021) (stating the prohibition on raising issues
for the first time on appeal enunciated in Pa.R.A.P. 302(a) applies to bar an
appellant from raising a new and different theory of relief for the first time on
appeal).

Even if reviewable, Beason's new theories would not merit relief.  As the
standard of review requires, the evidence and all reasonable inferences are
viewed in the light most favorable to the Commonwealth as verdict-winner.
Ample evidence demonstrated Beason's participation in the robbery
conspiracy that resulted in the victim's murder, including his presence in the
car with the other conspirators, his receipt of the gun used to shoot the victim,
his walk toward the victim's house with his conspirators, his frequent contacts
with the conspirators before and after the murder, his flight from the scene,
his identification on video by people who knew him and his distinctive coat
and sneakers, and his return to the scene two days after the murder to find
Elverton's cell phone.

used in the crime. *See id*. at 5. The court also noted the murder occurred in the course of a theft because the conspirators took a substantial step toward committing a theft. *See id*. at 6, citing 18 Pa.C.S.A. §§ 3701(a)(2), 901(a) (stating a person attempts to commit a crime when he does an act which constitutes a substantial step toward its commission).

The trial court's ruling is fully consistent with Pennsylvania law concerning accomplice and conspirator liability. *See* 18 Pa.C.S.A. §§ 306(c)-(d), 18 Pa.C.S.A. §3701(a)(1)(i), (2). Beason's second claim fails to demonstrate error.

Next, Beason challenges his conviction of conspiracy to commit robbery because witnesses did not identify him and no overt act toward the commission of robbery occurred. *See* Beason's Brief at 27-34.

The trial court found Beason asserted in his Rule 1925(b) Statement that the law required him to directly inflict the victim's injury while attempting to rob him; the court accurately responded that Pennsylvania law has no such requirements. *See* Trial Court Opinion, 5/16/23, at 7, citing Beason's Rule 1925(b) Statement at 3. The court stated Beason's conviction for conspiracy to commit robbery required only a shared criminal intent and an overt act, both of which were shown by evidence he obtained a gun and went to the crime scene with co-conspirators. *See* Trial Court Opinion, 5/16/23, at 7-8. The court clearly and accurately states Pennsylvania law. *See*

*Commonwealth v. Mitchell*, 135 A.3d 1097, 1103 (Pa. Super. 2016). Beason's third claim fails.

Finally, Beason asserts his identity was not proved in the context of a conspiracy to commit burglary. *See* Beason's Brief at 34-37.[8] The trial court asserts that because Beason did not receive a separate sentence for this offense, he was not "convicted" of it and may not raise a sufficiency challenge on appeal. *See* Trial Court Opinion, 5/16/23, at 8-9. To the contrary, the jury convicted Beason of conspiracy to commit burglary, notwithstanding the fact that he was not sentence on the offense of conspiracy to commit burglary. Accordingly, Beason may seek review of that conviction.[9] Based on the legal reasoning and analysis *supra.*, the evidence, in the light most favorable to the verdict winner, showed that Beason agreed with others to enter the victim's house and take his property, and so established his commission of conspiracy to commit burglary. *See* 18 Pa.C.S.A. § 3502(a)(3).

Judgment of sentence affirmed.

---

[8] There is some inconsistency in Beason's brief: he uses the terms "burglary" and "robbery" interchangeably. It appears from context he challenges his burglary conviction here, and we will proceed to analyze the crime of burglary.

[9] It is well-settled that where the result is correct, we may affirm a lower court's decision on any proper ground. *See Commonwealth v. Lehman*, 275 A.3d 513, 520 n.5 (Pa. Super. 2022).

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

7/18/2024